**Albert L. BARTLETT, II and Agnes T. Bartlett, his wife**

v.

**UNITED STATES of America.**

**Civ. No. B–74–767.**

United States District Court,
D. Maryland,
Baltimore Division.

July 28, 1975.

Eugene F. Scanlon, Jr., Pittsburgh, Pa., for plaintiffs.

Gregory S. Hrebiniak, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is an action by two taxpayers for the recovery of money which was paid to the United States after a deduction, claimed by plaintiffs on their 1971 joint income tax return, was disallowed. It is now before this court on cross motions for summary judgment. The parties have stipulated to the facts needed to decide the case.

On January 3, 1971, plaintiffs' 16-year-old son was involved in a one car accident while driving the plaintiffs' 1968 Buick LeSabre. Prior to the accident the vehicle had a retail value of $2,150.00; thereafter, it had a value of $425.00. Following the wreck, plaintiffs purchased a new car and rented another, at a cost of $238.50, pending delivery. Although plaintiffs had a valid collision insurance policy ($100 deductible) with a solvent insurer, plaintiff taxpayers elected to make no claim against their insurer for collision loss. Instead, plaintiffs attempted to deduct their losses and expenses from taxable income on their 1971 income tax return. They deducted $1,863.50 claiming that that amount equaled a loss of property which arose from casualty and was not compensated for by insurance or otherwise. See § 165(c)(3) Internal Revenue Code of 1954, 26 U.S.C. § 165(c)(3). The amount of the deduction was computed by adding the difference in the values of their car before and after collision ($1,725.00) to the cost of renting a car ($238.50), and then subtracting the $100 limitation prescribed by § 165(c)(3) of the Code.

In 1972, the Internal Revenue Service sent to the plaintiffs a report of audit changes noting an increase in income tax due for 1971. The report explained, "you cannot deduct a casualty loss when you fail to turn in a claim to your insurance company when the car is insured." Thereafter, the plaintiffs paid the money which the IRS had claimed was due, and, ultimately, they filed this suit.

The Internal Revenue Code permits individual taxpayers to deduct any loss sustained during a given tax year "and not compensated for by insurance or otherwise . . . if such losses arise from fire, storm, shipwreck or other casualty. . . ." § 165(a), (c)(3). In relevant part, the statute provides

(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) *Limitation on Losses of Individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit,

though not connected with a trade or business; and

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.

■ Plaintiffs' principal argument relies upon a literal application of the phrase "not compensated for by insurance or otherwise." Their theory assumes that "compensated" means "paid" and boils down to the following syllogism: § 165 permits deduction of property losses caused by casualty and not paid for by insurance; their property was "lost" by casualty and not paid for by insurance; therefore § 165 permits them to deduct the losses caused by casualty.

The Government counters with two principal arguments. First, it argues that the phrase "not compensated for by insurance" means "not covered by insurance." And, second, it urges that the taxpayers' losses did not "arise from fire, theft, shipwreck, or other casualty," but instead arose from the taxpayers' deliberate election not to collect money to which they were legally entitled under a contract of insurance. The Government also argues that, in any event, the expense of renting a car is not a casualty loss under § 165(c)(3).

This court is constrained to agree with the Government's position. Al-

though it cannot be disputed that property damage was caused by the son's automobile accident, the economic losses which the taxpayers seek to deduct did not arise exclusively and directly from that "casualty." Rather, in this court's view, to the extent the loss exceeded the insurance policy's $100.00 deductible clause, the "losses" arose from the taxpayers' voluntary election not to claim and to receive the insurance proceeds to which they were legally entitled. In other words, the taxpayers voluntarily assumed the expenses touched off by the accident and, thus, their assumption of the costs was not a "casualty" loss within the contemplation of § 165.

The reasons for this conclusion are not difficult to see. The obvious purpose of the casualty loss deduction for personal income taxes is to cushion the hardship occasioned by sudden, extensive economic losses caused by physical forces outside of the taxpayer's control. *See Cox v. United States*, 371 F.Supp. 1257 (N.D.Cal.1973). It is not designed to serve as a rebate mechanism for all unexpected expenses. Nor did Congress intend § 165(c)(3) to serve as optional insurance coverage for those who suffer property damage but who choose to collect from Uncle Sam rather than their insurance company. *See Axelrod v. Commissioner*, 56 T.C. 248 (1971) (Quealy, J., concurring).

Although, oddly enough, this exact issue has apparently never been decided in any reported opinion, the weight of the available authority supports this court's conclusion.

In *Kentucky Utilities Company v. Glenn*, 394 F.2d 631 (6th Cir. 1968), *aff'g* 250 F.Supp. 265 (W.D.Ky.1965), the Sixth Circuit faced a similar issue raised by a corporate taxpayer. In 1951, a steam generator owned by Kentucky Utilities (K–U) was seriously damaged in an accident, and repairs costing $147,537.60 were required. K–U had a $200,000 insurance policy ($10,000 deductible) with Lloyds of London, and it also had rights under the manufactur-

er's warranty. For business reasons, K–U did not wish to bring litigation against the manufacturer, nor did it wish Lloyds to sue the manufacturer on its subrogation claim. Also, because it feared difficulty in retaining insurance, the taxpayer did not want Lloyds to pay the entire loss (less the deductible). Thus, for business reasons, K–U settled with Lloyds and the manufacturer, in 1953, in an agreement whereby K–U assumed $44,486.67 of the total costs. Thereafter, K–U attempted to deduct the entire $44,486.67, first, as a loss under § 23(f) of the Internal Revenue Code of 1939 (the predecessor of § 165(a) of the Internal Revenue Code of 1954) and, second, as an ordinary business expense.

The District Court held that K–U had suffered a "loss not compensated by insurance" to the extent of the $10,000 deductible, but it rejected the claimed deduction for the remaining $34,486.67. It found as fact

6. For business reasons, K–U did not want any litigation brought against Westinghouse. Moreover, because of possible difficulty in retaining insurance of this character on its equipment, K–U did not want Lloyds to pay all of the loss except the $10,000.00 deductible under the policy.

. . . . . .

8. K–U voluntarily assumed $34,486.67 of the cost of repairs to the generator to protect Westinghouse from suit by Lloyds and to avoid difficulty in obtaining insurance with Lloyds. The expenditure of $34,486.-67 in this manner does not constitute a loss or an ordinary and necessary business expense.

9. K–U sustained a loss of $10,000.00 in 1953.

250 F.Supp. at 270. And it concluded as a matter of law

1. K–U did not sustain any loss during 1951 which was not compensated for by insurance or otherwise, within the meaning of Section 23(f)

of the Internal Revenue Code of 1939, and could not have deducted any loss by reason of the damage to its generator on its tax returns for 1951.

2. The settlement agreement provided that K–U assume $44,486.67 of the cost of repairs to the generator. Even though the [1953] settlement resulted in an amount unrecovered by K–U, any amount in excess of the $10,000.00 deductible under the policy cannot be considered as a loss because K–U's claim against Lloyds was not in dispute. K–U is not entitled to a deduction of $34,486.67 as a loss not compensated for by insurance or otherwise under Section 23(f) of the 1939 Internal Revenue Code.

*Id.* at 270–71. It also rejected the argument that the amount was an ordinary and necessary business expense. *Id.*

On appeal, the Sixth Circuit accepted the trial court's Findings of Fact Nos. 6 and 8 (quoted above), and held "KU's loss over and above the $10,000 allowed by the District Judge was not an 'uninsured loss.' *Sam P. Wallingford Grain Corp. v. Commissioner of Internal Revenue,* 74 F.2d 453 (10th Cir. 1934)." 394 F.2d at 633.

In *Sam P. Wallingford Grain Corp. v. Commissioner of Internal Revenue, supra,* (cited above by the Sixth Circuit) the Tenth Circuit faced an attempt to deduct, as a corporate loss, the voluntary payment of the debts of a bankrupt, predecessor corporation. Although there were valid business justifications for the payments, the court held, first, that the expenditures could not be deducted as "ordinary" business expenses. It then wrote,

Nor did the payments give rise to a loss not compensated for by insurance or otherwise. Revenue Act of 1928, § 23(f) . . . .. It has been repeatedly held that voluntary payments do not give rise to losses within the meaning of this section. [cites omitted].

*Id.* 74 F.2d at 454.

In 1971, the Tax Court decided a case in which the taxpayer claimed a casualty loss for damage to his sailboat during a storm, even though his boat was covered by insurance and he had not attempted to collect on the policy. *Axelrod v. Commissioner*, 56 T.C. 248 (1971). The opinion of the court held that, the insurance question aside, the taxpayer had failed to prove that the damage to his sailboat was done by the storm, as opposed to ordinary wear and tear. Individually, several judges reached the question of whether the taxpayer's failure to collect insurance proceeds, to which he was admittedly entitled, precluded his claiming a casualty loss deduction under § 165(c)(3). Three judges indicated that in their opinions "valid practical reasons" for failing to collect insurance could prevent disallowance of a casualty loss deduction. However, five judges, in an opinion by Judge Quealy, expressed the view that failure to file an insurance claim for losses which admittedly were covered by a valid insurance policy barred any deduction for such losses under § 165(c)(3).

In his opinion, Judge Quealy indicated, first, that because of the voluntary assumption of the loss there was no casualty loss and, second, that because the loss was covered by a valid insurance policy, it was "compensated by insurance or otherwise." Judge Quealy's opinion, with which this court agrees, states

> Although the loss was insured, the petitioner elected not to file a claim, not on the belief that the claim would be contested or disallowed, but on the belief that the filing of the claim would result in his inability to renew his · policy. It is clear that under these circumstances the petitioner had no casualty loss in 1965 which was "not compensated" or "made good" by insurance within the meaning of the statute and respondent's regulations. Any economic disadvantage which petitioner may have sustained was not

as a result of any casualty loss not being compensated for by insurance but rather was as a result of his choosing not to accept the funds available in compensation for any casualty loss.

> Under such circumstances any economic disadvantage resulting to petitioner from injury to his boat could not be a casualty loss "not compensated for by insurance" but was a disadvantage resulting from petitioner's choice not to pursue the right which he had for strictly personal reasons. Just as an insurance payment with respect to personal property results in a nondeductible expense, so the choice not to take the compensation available under an insurance policy results in a nondeductible personal loss.

· · · · · ·

> Regardless of whether or not a loss was incurred, that loss was compensated for by insurance and thus no casualty loss could exist under section 165(a).

· · · · · ·

> ·Any loss sustained by the petitioner resulted from his election not to claim compensation rather than from the casualty loss not being compensated for by insurance. We would certainly not allow a taxpayer to have a deduction for a bad debt loss when the facts showed that he could have collected the debt but chose not to do so for some personal reason. There is no substantive difference in the two situations.

Finally, Judge Quealy noted,

> There have been times when the surtax rate applied to individuals was as high as 91 percent. . . . It would be unreasonable to assume without specific direction by Congress that the tax law was designed to put a taxpayer in the position to choose between the recovery of a loss from the government through a deduction or the recovery from his insurer.

Plaintiffs' constitutional claim is likewise unavailing. The Constitution does not bar the Internal Revenue Code from distinguishing between persons on the basis of the magnitude of their need for a deduction. *See generally Barclay & Co., Inc. v. Edwards*, 267 U.S. 442, 450–51, 45 S.Ct. 348, 69 L.Ed. 703 (1924).

Lastly, regardless of whether the taxpayers may deduct the damage done to their automobile as a casualty loss, they clearly cannot recover the additional, consequential, and personal expense of renting another car. *Feistman v. Commissioner*, 30 T.C.M. 590 (1971). *See Tasey v. Commissioner*, 56 T.C. 553 (1971); *Sullivan v. Commissioner*, 30 T.C.M. 1219 (1971).[1]

In sum, having failed to claim a loss under their insurance policy and being unable to deduct, separately or additionally, the expense of renting a car, the taxpayers can only deduct that portion of the loss, in excess of the statute's $100 exclusion, which would not have been repaid by insurance upon proper application therefor. But, as their insurance would have covered all but the first $100 of damages—the amount of their deductible—the taxpayers end up with no permissible deduction for the damages to their automobile.

For the foregoing reasons, it is this 28th day of July, 1975, Ordered

(1) That the motion for summary judgment filed by the plaintiffs is Denied;

(2) That the motion for summary judgment filed by the defendant is Granted;

(3) That judgment in favor of the defendant shall be entered separately.

1. In *Connor v. United States*, 439 F.2d 974, 981 (5th Cir. 1971), the district court had permitted a casualty loss deduction measured by the difference in fair market value of a house before and after a fire, less the insurance proceeds for the loss, and minus the $100 exclusion contained in § 165(c)(3). The Fifth Circuit remanded for recalculation to further reduce the amount of the deduction by the amount paid by the insurer for rental

of another house during the rebuilding. In effect, the Court of Appeals held that the expense of living elsewhere, while awaiting the availability of the house, was a necessary element of the fair market value of the house after the fire. In other words, to treat the expense of renting alternative facilities as an additional loss would have the effect of permitting double recovery.