**WAXLER TOWING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 79–2564.

United States District Court, W. D. Tennessee, W. D.

March 26, 1980.

Lee L. Piovarcy, Martin, Tate, Morrow & Marston, Memphis, Tenn., for plaintiff.

Lawrence Sherlock, Tax Div., U. S. Dept. of Justice, Washington, D. C., W. Hickman Ewing, Jr., U. S. Atty., Memphis, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

### WELLFORD, District Judge.

Plaintiff is in the marine towing business. One of its barges was damaged in a collision in June, 1972. Although damage to the barge was covered by insurance, plaintiff did not file a claim under its insurance policy but paid for the repairs to the barge itself and deducted the costs of the repairs on its income tax return for the year ending June 30, 1973. The Commissioner of Internal Revenue disallowed the deduction; plaintiff exhausted its administrative remedies and then filed this action for refund of the taxes it contends were illegally and erroneously assessed and collected.

Plaintiff contends that the deduction should have been allowed under one of two theories: 1) as a loss not compensated for by insurance under § 165(a) of the Internal Revenue Code (26 U.S.C.), or 2) as ordinary and necessary business expenses, under § 162(a) of the Code.[1] Defendant disallowed the deduction, relying on the authority of *Kentucky Utilities Co. v. Glenn*, 394 F.2d 631 (6th Cir. 1968), *aff'g.*, 250 F.Supp. 265 (W.D.Ky.1965), in which the court disallowed a deduction under both of the theories asserted by plaintiff in this case. In this action, defendant filed a motion for judgment on the pleadings, arguing that *Kentucky Utilities* precludes plaintiff from recovering on its refund claim as a matter of law. .

Plaintiff contends that it had valid and compelling business reasons for not filing a claim under its insurance policy, and that these reasons preclude defendant from disallowing its deduction. Plaintiff has alleged the following facts to support its business decision. Its marine towing operation involves transporting the cargo of others from place to place as designated by contract. This cargo is almost always a form of petroleum of a highly flammable and explosive nature. Because of the high potential for damage, liability and other casualty insurance is absolutely required in the towing contracts between plaintiff and its customers, the owners of the cargo; industry-wide regulations prohibit operating without insurance. A tower's ability to obtain such insurance is based to a great degree upon its past liability and accident experience, and premiums are based upon its experience record; coverage is not available to everyone who applies. Prior to the tax years in question, plaintiff's liability and accident experience had been so poor that its previous underwriters had refused to renew its coverage. It obtained new insurance at a substantial premium ($112,000 a year), on a limited or trial basis. Soon after obtaining the new insurance, the collision that gave rise to the repairs in question here occurred. Plaintiff sought the advice of its insurance agent, who advised plaintiff against filing a claim for the damage because it would either jeopardize the new coverage at a time when very few underwriters would insure plaintiff or increase the premium rate about 150 per cent. The entire damage could be repaired at a cost thousands of dollars less than the increase in premium for only one year. Plaintiff therefore did not file an insurance claim but paid for the repairs itself.

Defendant, by reason of the nature of its motion, has not contested the validity or

---

1. § 165(a) provides: "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

§ 162(a) provides, in part: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. . . ."

compelling nature of the business reasons asserted by plaintiff for not filing a claim. Rather, it argues that where a taxpayer incurs expenses that are covered by insurance and does not seek reimbursement from the insurer, for *whatever* reasons, the expenses are not losses "not compensated for by insurance" within the meaning of § 165 and are not ordinary and necessary business expenses within the meaning of § 162. It claims that plaintiff is not entitled to relief as a matter of law and that its motion for judgment on the pleadings therefore should be granted.

In the leading case of *Kentucky Utilities*, the plaintiff utility company had purchased a generator from Westinghouse, which was damaged in an accident. The generator was covered by insurance, and the insurer did not dispute its liability; but it demanded subrogation rights against Westinghouse under the latter's warranty, in return for payment under the policy. Although Kentucky Utilities thought that Westinghouse was liable for the loss under its warranty, it voluntarily assumed the costs of the repairs rather than accept reimbursement from the insurer with the condition imposed. The district court found that Kentucky Utilities wanted to protect Westinghouse, its supplier, from suit by the insurer, to maintain business goodwill, and it wished to avoid "possible difficulty in retaining insurance." Two years later, however, the transaction was settled, with all three parties bearing a portion of the loss. Kentucky Utilities sought to deduct its portion of the expenses (above the policy deductible amount) under § 165 or § 162. The district court held for the government, disallowing a § 165 loss because Kentucky Utilities' loss was covered by insurance; the insurer had never disputed liability, thus it was not a loss "not compensated for by insurance." As to the § 162 claim, the court held that the business reasons asserted by Kentucky Utilities for not accepting insurance reimbursement were not sufficient to change the extraordinary character of the expenses into ordinary ones. The Sixth Circuit affirmed this holding without much discussion, stating that the district court's findings were not clearly erroneous.

There is not much additional case law to provide guidance to the Court on these issues. In *Axelrod v. Commissioner*, 56 T.C. 248 (1971), the Tax Court was presented with the casualty loss of an individual taxpayer who had had several previous policy cancellations because of a poor accident record and thus did not file an insurance claim for damages to his sailboat. In the majority opinion, the court disallowed the deduction because the taxpayer could not substantiate the expenses he sought to deduct, and did not reach the § 165 "not compensated for by insurance" issue. Two separate concurring opinions did discuss the issue, however, with opposite conclusions. Judge Quealy's opinion, joined by four other judges, supported the *Kentucky Utilities* holding and stated that the plaintiff's losses arose not from a casualty but from the economic loss resulting from failure to seek insurance reimbursement. Judge Fay's opinion, joined by two others, criticized the *Kentucky Utilities* decision rationale, urging reconsideration. He stated that the purpose of limiting the § 165(a) deduction to losses not compensated for by insurance is to deny a windfall to taxpayers whose losses are "essentially ephemeral losses, the effects of which will be neutralized by the receipt of compensation." 56 T.C. at 259. He recognized the practical realities that sometimes force a taxpayer to forego his insurance coverage and stated that he would interpret the statute to provide a deduction "for insured but unrecovered losses where the taxpayer has, for valid practical reasons, relinquished his rights to claim compensation from the insurance company." 56 T.C. at 260.

*Bartlett v. United States*, 397 F.Supp. 216 (D.Md.1975), followed *Kentucky Utilities* in denying the § 165 loss deduction to an individual taxpayer who did not make a claim for the damage to his insured automobile. The court there endorsed the view of the Quealy concurring opinion in *Alexrod* as to the source of plaintiff's losses. The Tax Court also recently followed *Kentucky Utilities* in a memorandum decision, *F. Tyler*

*Morgan v. Commissioner,* 37 T.C.M. 524 (1978), with little discussion. The cases discussed are apparently the only ones dealing with the precise issues presented in this case called to our attention; *Kentucky Utilities* is the only one of them that involved the §162 business expenses question in addition to the §165 problem.

This Court is prepared to follow the rule stated in *Kentucky Utilities, Bartlett,* and *Morgan,* as to the unavailability of the loss deduction in the fact situation presented here by plaintiff. Although the Code and its interpretive regulations[2] do not specifically state that "not compensated for" means "not covered by" insurance, the case law makes a convincing basis for such a meaning.

The availability of the §162 deduction bears further inquiry, however. In *Kentucky Utilities,* the taxpayer claimed business reasons behind its decision not to pursue insurance reimbursement, concern for its business goodwill with Westinghouse and for retaining its insurance coverage; the district court acknowledged the existence of these business factors. The plaintiff here, however, argues with persuasion that the business factors in *Kentucky Utilities* are very substantially less compelling than the instant situation. Plaintiff avers that it had reasonable cause to believe that it might be unable to obtain alternative coverage should filing of this claim cause its new carrier to deny permanent coverage, without which it could not operate its business. Plaintiff also argues that *Kentucky Utilities* was apparently not in a comparable situation, in light of its ultimate settlement with both Westinghouse and the insurer. The alleged compelling nature of its business reasons for not making a claim raise material questions of fact as to whether they constitute *ordinary* and *necessary* business expenses sufficient to withstand a motion for judgment on the pleadings.

The question whether expenses are ordinary and necessary business expenses within the meaning of §162 is a factual inquiry. "Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances." *Commissioner v. Heininger,* 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943). In speaking of this inquiry, Mr. Justice Cardozo stated for the Court:

> Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle.

*Welch v. Helvering,* 290 U.S. 111, 114–15, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933).

The Court concludes that plaintiff has alleged sufficiently compelling reasons behind its asserted business decision to pay the repair costs of its barges from its own funds rather than insurance to raise a factual inquiry as to whether those costs were ordinary and necessary business expenses deductible under §162. The government's motion for judgment on the pleadings is therefore denied, and the case will proceed, giving plaintiff an opportunity to prove that the expenses fall within §162.

In light of *Kentucky Utilities,* defendant may wish to appeal this ruling. The Court is therefore prepared to certify that the ruling "involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation" within the meaning of 28 U.S.C. §1292(b).[3]

It is so ORDERED.

---

**2.** Internal Revenue Regulations §1.165–1(a).

**3.** The government chose not to request the Court to certify the question for interlocutory appeal. After the trial of the case notice of appeal was filed by the government. The appeal was dismissed with prejudice pursuant to a stipulation between the parties to voluntarily dismiss.