*Decision will be entered for the respondent.*

HENRY L. AND FRANCES O. HILLS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5889–79.    Filed March 30, 1981.

Henry L. Hills and Frances O. Hills, pro se.
*Bettie N. Ricca*, for the respondent.

---

## OPINION

NIMS, *Judge*: Respondent determined a deficiency of $190 in petitioners' income tax for the taxable year 1976. Concessions having been made, the issue for decision is whether petitioners are entitled to a deduction for a theft loss under section 165(c)(3).[1]

All of the facts have been stipulated. The stipulation and attached exhibits are incorporated herein by reference.

At the time the petition in this case was filed, petitioners resided in Atlanta, Ga.

On November 19, 1960, petitioners purchased a parcel of property in Lumpkin County, Ga. This property fronts on a lake in a rural wooded area and is approximately 10 miles from Dahlonega, Ga. Subsequent to their purchase, petitioners built a house on the property.

On Thursday, April 1, 1976, petitioner Henry L. Hills (petitioner) visited the property and found the inside of the house in disarray; drawers were open with their contents spilled onto the floor. Petitioner drove to his nearest neighbor and called the sheriff to report a burglary. Petitioner compiled a list of the missing items and turned it over to the sheriff's office. The aggregate estimated value given for listed items was $446.

During 1976, petitioners' property was covered under an Aetna Homeowners Insurance Policy. This policy covered losses from vandalism, malicious mischief, and theft. Petitioners had had their homeowners insurance with Aetna for many years.

As of April 1, 1976, petitioners had filed three previous claims with Aetna relating to burglaries at the lake property. These burglaries occurred on March 13, 1968, October 26, 1972, and July 16, 1974, and occasioned respective losses of $750, $840, and $911 in personal property. Petitioners never filed a claim with Aetna for the 1976 burglary as they feared their policy would not be renewed.

On their 1976 joint Federal income tax return, petitioners claimed a theft loss in the amount of $660 ($760 less the $100 "floor" required by section 165(c)(3)). The $760 amount included numerous other items found to be missing after the list was

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise specifically indicated herein.

submitted to the sheriff. In addition, petitioners took into account the cost of repairs to a door and locks, long-distance phone calls, travel expenses in connection with testifying against the burglary suspects, and the costs of new keys and installing additional locks. Respondent disallowed this deduction because petitioner's insurance policy covered losses from vandalism and theft.

The issue herein involves whether the loss which resulted from the burglary of petitioners' house in 1976 was "not compensated for by insurance or otherwise" within the meaning of section 165(a). Petitioners assert that they are entitled to a theft loss deduction notwithstanding their voluntary failure to file a claim for reimbursement with their insurance company. As petitioners were concerned that a fourth claim would jeopardize their extant policy,[2] they feel that in essence their position is the same as if they had no insurance coverage.

Respondent does not contest the amount of the claimed loss. He argues that, since the loss would have been covered had an insurance claim been filed, the loss was "compensated for by insurance" and thus not deductible under section 165(a). Respondent also maintains that, in a case such as this, the loss is not attributable to the theft but instead arises from the petitioners' voluntary election not to claim the insurance reimbursement to which they were entitled. See *Axelrod v. Commissioner*, 56 T.C. 248, 261 (1971) (concurring opinion of Judge Quealy); *Bartlett v. United States*, 397 F. Supp. 216 (D. Md. 1975); Rev. Rul. 78–141, 1978–1 C.B. 58. In making the foregoing arguments respondent has, in effect, expanded the meaning of "not compensated for by insurance" to also encompass not *covered* by insurance. Although the facts of *Axelrod* made it ultimately unnecessary for us to confront respondent's interpretation of the statute in that case, we are squarely presented with the issue here. For several reasons, outlined below, we cannot accept respondent's view.

As a matter of statutory construction, the normal, everyday meaning of the word "compensated" does not comport with

---

[2]On brief, petitioners assert (although there is no testimony to support the assertion) that their reluctance to file a claim stemmed primarily from a fear of jeopardizing the fire insurance coverage which was also included in their policy. Petitioners state that since their house is in a rural mountain area which lacks nearby firefighting facilities, any cancellation would only exacerbate the disinclination of insurance companies to provide fire coverage for their home.

respondent's interpretation. To compensate denotes "to pay" or "to make up for."[3] The reason for denying a loss deduction when a taxpayer's loss has been compensated (made up for or paid) is relatively easy to comprehend. The taxpayer has not sustained a true economic loss when the detrimental effects of the loss (vis-a-vis the taxpayer's net worth) are counterbalanced by the *receipt* of money or replacement property. However, to expand the meaning of compensated from actual to *potential* recoupment defies the word's acceptation.

The legislative etymology of "not compensated for by insurance" is also illustrative of the incongruous meanings of "compensated" and "covered." This portion of section 165(a) is derived from section 28 of the Revenue Act of 1894, Pub. L. 227, ch. 349, 28 Stat. 509, 553. As originally reported by the Committee on Ways and Means, the bill allowed deductions for "losses actually sustained during the year * * * and not covered by insurance or otherwise, and compensated for." The Senate Finance Committee amended the bill so that the final version read: "losses not compensated for by insurance." See J. Seidman, Seidman's Legislative History of Federal Income Tax Laws (1938–1861), p. 1018 (1938).[4] A reasonable inference as to the reason for the revision[5] is that the Finance Committee sought to eliminate the redundancy in the first draft: all losses compensated by insurance are also, as a necessary concomitant, covered by insurance. Nonetheless, it should be equally obvious that the converse, i.e., that all losses covered by insurance are also compensated for, is not necessarily true.

Further, respondent's own regulations do not bear out the expanded construction of "compensated for" offered by respondent. Section 1.165–1(a), Income Tax Regs., states that a deduction shall be allowed for "any loss actually sustained during the taxable year *and not made good* by insurance or some other form of compensation." (Emphasis supplied.) Section 1.165–1(c)(4), Income Tax Regs., also states that in determining

---

[3] Webster's Third New International Dictionary (1971).

[4] This income tax act was held unconstitutional in *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 (1895), rehearing 158 U.S. 601 (1895). However, the Pub. L. 227 language was reenacted by the Revenue Act of 1913, Pub. L. 16, ch. 16, 38 Stat. 114, 167, 172, and has remained in the relevant statutes to the present time.

[5] There were no reports published by the Finance Committee for this bill.

the amount of the loss "proper adjustment shall be made for any salvage value and for any insurance or other compensation *received.*" (Emphasis supplied.) Both of these provisions in the regulations are consistent with the idea of actually receiving payment or being made whole.

We are not persuaded by the argument that the petitioners' voluntary failure to file for an insurance claim signifies that the loss results from that election and not the loss event or transaction. By the same token, any theft or casualty loss suffered by an individual taxpayer who voluntarily chooses not to maintain insurance coverage can likewise be said to result from the choice to forego insurance coverage. When a taxpayer fails to pursue a right of insurance recovery, his economic loss is nonetheless sustained and a deduction should be allowed. To hold otherwise would unjustifiably advantage taxpayers who voluntarily decline insurance coverage.[6]

It is enlightening that section 1.165–1(d)(2)(i), Income Tax Regs., which concerns the year in which the loss deduction may be claimed, specifically alludes to a taxpayer's abandonment of a claim for reimbursement:

> (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. *Whether or not such reimbursement will be received* may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, *or by an abandonment of the claim.* When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release. [Emphasis supplied.]

The abandonment of a claim will result in the taxpayer's failure to receive any reimbursement for his loss. Where, for

---

[6]There is a substantial incentive for taxpayers in the higher brackets to self-insure or substantially underinsure since the rate of reimbursement (from the Government via a loss deduction) can approach or equal 70 percent. See U.S. General Accounting Office, The Personal Casualty and Theft Loss Tax Deduction: Analysis and Proposals for Change (GGD–80–10, 1979).

example, a taxpayer has commenced a civil suit in conversion against the thief/tort-feasor, there may be a host of practical reasons for abandoning his cause of action. Among other things, these could include the cost of the litigation vis-a-vis the eventual recovery, hardship, or the involvement of a substantial amount of time and expense. Although the above regulation appears to be directed more toward a litigation context (because of the employment of words such as "settlement," "adjudication," and "abandonment"), the regulation would seem to be equally apropos to situations where reimbursement would be in the form of an insurance recovery. Since the regulations expressly contemplate abandonment of a claim for reimbursement (one already initiated), we can discern no reason why, in an insurance context, analogous pragmatic considerations should not be relevant when the taxpayer must determine at the outset whether his interests would be better served by never asserting his recovery rights.

The various authorities which respondent has cited (*Kentucky Utilities Co. v. Glenn*, 394 F.2d 631 (6th Cir. 1968), affg. 250 F. Supp. 265 (W.D. Ky. 1965); *Axelrod v. Commissioner, supra*; *Bartlett v. United States, supra*), do not persuade us otherwise. In *Kentucky Utilities*, the generator of the taxpayer (K-U) was damaged, and $147,537.60 in repairs was required. K-U's $200,000 insurance policy with Lloyds of London covered all of the loss except for a $10,000 deductible. In addition, K-U had warranty rights against the manufacturer, Westinghouse, although the latter denied liability. Lloyds was willing to pay K-U under its insurance policy, but would assert any subrogation rights it had against Westinghouse if it were to make such payment. Evidently, litigation between K-U and Westinghouse would have adversely affected business relations between the two. Moreover, K-U feared that if Lloyds were required to pay for the entire loss, then the insurance coverage on its equipment would be jeopardized. As a consequence, the three parties agreed to a settlement whereby Westinghouse paid $65,550.93 of the repair cost, Lloyds paid $37,500 and relinquished any subrogation rights it had against Westinghouse, and K-U assumed the remaining $44,486.67. The District Court found that $34,486.67 of the amount K-U assumed could have been recovered under its policy with Lloyds. The Court's legal analysis on this issue is contained in the following two paragraphs:

K-U did not sustain any loss during 1951 which was not compensated for by insurance or otherwise, within the meaning of Section 23(f) of the Internal Revenue Code of 1939 [the predecessor of present section 165(a)], and could not have deducted any loss by reason of the damage to its generator on its tax returns for 1951.

The settlement agreement provided that K-U assume $44,486.67 of the cost of repairs to the generator. Even though the settlement resulted in an amount unrecovered by K-U, any amount in excess of the $10,000.00 deductible under the policy cannot be considered as a loss because K-U's claim against Lloyds was not in dispute. K-U is not entitled to a deduction of $34,486.67 as a loss not compensated for by insurance or otherwise under Section 23(f) of the 1939 Internal Revenue Code. [250 F. Supp. at 270–271.]

The Sixth Circuit, on appeal, accepted the District Court's findings of fact as to K-U's business reasons for making the settlement and stated:

This record convinces us that the District Judge's quoted findings of fact are not clearly erroneous. KU's loss over and above the $10,000 allowed by the District Judge was not an "uninsured loss." Sam P. Wallingford Grain Corp. v. Commissioner of Internal Revenue, 74 F.2d 453 (10th Cir. 1934). [394 F.2d at 633.]

We view *Kentucky Utilities* as distinguishable from the instant case and, in any event, in light of the brief treatment of the issue, therein, that case should not preclude a fresh consideration of this issue. See concurring opinion of Judge Fay in *Axelrod v. Commissioner*, 56 T.C. at 259.[7]

In *Axelrod v. Commissioner, supra*, the taxpayer's sailboat was damaged during a boat race which occurred in foul weather. The taxpayer made no claim for reimbursement under his insurance policy. We held that the taxpayer failed to prove either the amount of the loss or that the foul weather rose to the level of a casualty. Accordingly, the issue of whether voluntary

---

[7]The Circuit Court's opinion states that "K-U's loss over and above the $10,000 allowed by the District Judge was not an 'uninsured loss.' " The term "uninsured loss" is not contained in sec. 165(a) or in the cited case, *Sam P. Wallingford Grain Corp. v. Commissioner*, 74 F.2d 453 (10th Cir. 1934). In that case a corporate taxpayer, in order to protect its credit and business standing, paid various debts of its president and a predecessor partnership and corporation; it was under no legal obligation to do so. The Court held that such payments were not deductible either as business expenses or losses. An uninsured loss would clearly be commensurate with a loss that was not "covered by insurance," but that is not the statutory language before us.

In the recent case of *Miller v. Commissioner*, T.C. Memo. 1980–550, this Court, pursuant to *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), abided by the rule announced in *Kentucky Utilities Co. v. Glenn*, 394 F.2d 631 (6th Cir. 1968), affg. 250 F. Supp. 265 (W.D. Ky. 1965), in holding that the taxpayer therein was not entitled to deduct a portion of a casualty loss his boat sustained.

failure to file for insurance reimbursement precludes a deduction under section 165(a) was not addressed.[8]

In a concurring opinion in *Axelrod*, Judge Quealy stated that, aside from any failure of proof, the legal issue should have been addressed since even if the facts were as alleged (i.e., a specified loss resulting from a casualty), the taxpayer, as a matter of law, could not have prevailed because the loss was not one "not compensated for by insurance." The central rationale was essentially the same as respondent's argument here: that the loss did not result from a casualty but rather from the taxpayer's choice in not pursuing his right of insurance recovery.

Judge Fay's concurring opinion in *Axelrod* expressed the concern that there is no statutory authority for an expanded interpretation of "compensated for." He also indicated his view that individuals who are forced to assume a loss out of fear of policy cancellation are, in effect, without insurance and thus are unduly disadvantaged vis-a-vis those taxpayers who choose to self-insure. Similarly, petitioners here, as a result of the fourth theft in an 8-year period, were forced to assume a loss out of fear that their policy would not be renewed. As a matter of fact, petitioners might also have feared that any renewal cost would have been exorbitant as a result of any such claim. They were faced with the no-win situation of either risking nonrenewal of their policy or being unable to claim a loss deduction for a sustained casualty.

We note, however, that in *Bartlett v. United States, supra,* the District Court held that the taxpayers there were not entitled to claim a casualty loss deduction when they voluntarily elected not to pursue their right of reimbursement against their insurance company. We must respectfully disagree with this holding for reasons previously stated.

We accordingly hold that since petitioners sustained a loss

---

[8]Respondent has directed our attention to *Morgan v. Commissioner,* T.C. Memo. 1978–116. However, since we read *Axelrod v. Commissioner,* 56 T.C. 248 (1971), as not having reached the issue before us, we consider the statements in *Morgan* relied upon by respondent as offering limited guidance toward the resolution of the instant dispute.

during the taxable year which was not compensated for by insurance or otherwise, a deduction for such loss is allowed.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, *J.*, dissenting: I respectfully dissent. Section 165, I.R.C. 1954, is designed to permit a deduction when a taxpayer suffers an economic loss. The obvious corollary is that, as provided in subsection (a), the loss must not be "compensated for by insurance."

Subsection (c)(3) further limits losses incurred by individuals with respect to nonbusiness property to specific circumstances, i.e., "losses * * * from fire, storm, shipwreck, or other casualty, or from theft." The foregoing circumstances have a common denominator: they are caused by forces external to the taxpayer and they are beyond the victim's volition. The courts have frequently emphasized the unexpected nature of the loss when defining "casualty"; equally unexpected is a theft. The latter term is defined in section 1.165–8(d), Income Tax Regs., as including "larceny, embezzlement, and robbery."

The petitioners premise their claimed loss on the admitted fact that a theft did occur, resulting in an obvious economic loss to them. However, equally conceded is the fact that the petitioners' stolen property was covered by insurance. There is no allegation that the insurance company questioned its liability or even the amount. Nonetheless, the petitioners chose not to file a claim and accept their contractual right to be made whole through reimbursement. Thus, it seems beyond peradventure that the operative fact resulting in the loss was not a theft (or any other unexpected event beyond their volition), but the petitioners' voluntary act in refusing to accept their entitlement. Just as a taxpayer cannot avoid taxation by turning his back on income, a taxpayer should not be allowed a deduction because he has refused to accept reimbursement. See generally *Central Tablet Manufacturing Co. v. United States*, 417 U.S. 673, 684–685 (1974).

On page 487, the majority herein says:

all losses compensated by insurance are also, as a necessary concomitant, covered by insurance. Nonetheless, it should be equally obvious that the

converse, i.e., that all losses covered by insurance are also compensated for, is not necessarily true.

From one perspective, the above language begs the question because if one is covered by insurance, he will be compensated unless he voluntarily chooses not to file a claim. In the latter event the loss is due, *not* to one of the circumstances listed in section 165(c)(3)—not to a theft—but rather to the insured's own election not to accept reimbursement under his insurance policy, a separate identifiable event. To try to draw a distinction between covered and compensated, in a section 165 setting, is to amend, judicially, subsection (c)(3) by adding another circumstance under which a taxpayer may take a deduction for a loss.

We were told in *International Trading Co. v. Commissioner*, 484 F.2d 707, 712 (7th Cir. 1973), revg. 57 T.C. 455 (1971), that there was "no room for the exercise of judicial discretion in the construction of Section 165(a)." I see even less room for the judicial discretion exercised by the majority in its interpretation of section 165(c)(3).

SCOTT, TANNENWALD, and PARKER, *JJ.*, agree with this dissent.