WILLIAM J. O'NEILL, JR., AND DEBORAH B. O'NEILL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Neill v. Commissioner
Docket No. 2858-82.
United States Tax Court
T.C. Memo 1983-583; 1983 Tax Ct. Memo LEXIS 202; 46 T.C.M. (CCH) 1476; T.C.M. (RIA) 83583; September 22, 1983. Charles E. Natkins, for the petitioners. *203 Carol A. Szcezpanik, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $1,765.15 in petitioners' 1978 individual Federal income tax. The sole issue for decision is to what extent, if any, petitioners are entitled to a casualty loss deduction under section 165. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Shaker Heights, Ohio, when they filed their 1978 individual Federal income tax return and in Hunting Valley, Ohio, when they filed their petition in this case. Petitioners purchased a home in Shaker Heights, Ohio, in 1969. They owned and resided in that home until 1981. Each spring, petitioners hired contractors to repair any damage to the house occasioned by the weather of the preceding winter. The Ohio winters of 1977 and 1978 were unusually harsh. We take judicial *204 notice of the fact that on February 2, 1977, the impact of an "abnormal accumulation of snow and ice resulting from a series of blizzards and snowstorms" was of a severity sufficient to warrant a Presidential determination that all counties of Ohio qualified for disaster assistance under the Disaster Relief Act of 1974. Rev. Rul. 77-490, 1977-2 C.B. 64, 65. The following year, on January 26, 1978, the President again determined that all counties of Ohio were entitled to disaster assistance as a result of the "abnormal accumulation of snow resulting from a series of blizzards and snowstorms." Rev. Rul. 78-440, 1978-2 C.B. 115, 118. The abnormal accumulation of snow in 1978 was followed by a period of subfreezing temperatures averaging 11 degrees below normal in February and over 12 degrees below normal during the first eight days of March. A significant thaw first occurred on March 9, 1978, when the temperature rose more than 10 degrees above freezing. The winter weather in 1977 caused ice damage to petitioners' home. That damage was the subject of a claim filed with and paid by the St. Paul Insurance Company (hereinafter "St. Paul"). The following year *205 petitioners' residence was again damaged by the severe winter weather. The winter storms in early 1978 caused an abnormal accumulation of ice to form on the roof of petitioners' home. When the temperature finally rose above freezing, the melting snow could not drain properly because of the damming effect of the accumulated ice. The melting snow was thus forced to drain under the roof and into the interior of the house. Petitioners noticed the interior damage within one or two days of the thaw. In repairing this damage, petitioners incurred costs of $125.00 and $631.03 for external repairs to their house. In addition, interior repairs were effected at a cost of $3,169.79. Of this $3,169.79, only 90 percent, or $2,852.81, was allocable to the damage resulting from the ice blockage. The total cost of repairs allocable to the ice damage was thus $3,608.84. These repairs merely restored the property to its value prior to the winter weather in early 1978. Petitioners carried homeowner insurance with St. Paul in 1978. This policy had a $500 deductible amount during the year in issue. However, petitioners chose not to file a claim for the 1978 ice damage. Petitioner William *206 J. O'Neill testified at trial that a claim was not filed because he was concerned that his premiums would be increased or that his coverage would be curtailed or cancelled. On the theory that the cost of repairing the ice damage was an uncompensated casualty loss, petitioners deducted $3,191.86 [2] from their 1978 income. Respondent disallowed all but $400.00 of the deduction. [3]
OPINION Respondent argues that *207 no amount is deductible because the damage was caused by a steadily operating force, not a sudden occurrence, and so there was no casualty within the meaning of section 165(c)(3). Respondent further argues that, even if there was a section 165(c)(3) casualty, petitioners have proven neither the amount of their loss nor that it was uncompensated. Petitioners contend that a casualty within the meaning of section 165(c)(3) did occur causing a loss in the amount of $3,608.84, for which they were not compensated. Section 165 provides in relevant part: (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) AMOUNT OF DEDUCTION.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * *208 (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. * * * Petitioners bear the burden of proving they sustained a loss deductible under section 165(a). Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent's initial argument is that there was no "storm * * * or other casualty" within the meaning of section 165(c)(3). We do not agree. Respondent is correct that no deduction is permitted by section 165(c)(3) for a loss occasioned by the progressive deterioration of property effected by a steadily operating cause. See Fay v. Helvering,120 F.2d 253 (2d Cir. 1941), *209 affg. 42 B.T.A. 206 (1940). Respondent is also correct that the term "casualty" is construed to refer to an indentifiable event of a sudden, unexpected or unusual nature. See White v. Commissioner,48 T.C. 430 (1967); Durden v. Commissioner,3 T.C. 1 (1944); Fay v. Helvering,supra.However, we neither find nor are referred to any authority prohibiting a casualty loss deduction because the loss arose from damage caused by a series of closely timed storms which would individually constitute casualties within the meaning of section 165(c)(3).[4] In fact, numerous decisions of this Court and others have permitted a deduction under section 165(c)(3) for losses arising from a series of storms or other prolonged and abnormally severe weather conditions. [5] Thus we reject under the facts herein the argument that damage resulting from such conditions constitutes damage in the nature of progressive deterioration caused by steadily operating force. *210 Petitioner directs our attention to Jackson v. Commissioner,T.C. Memo. 1955-304, in which a casualty loss deduction was allowed for a loss sustained as a result of an ice dam. In Jackson, the ice dam was formed during a heavy snowfall which "continued for some time" and was followed by "many days" of subfreezing temperatures. The damage occurred when the temperature finally rose above freezing and the ice dam forced the melting snow down into the interior of the house. In the present case, a series of winter storms severe enough to warrant a Presidential declaration of disaster assistance, followed by subfreezing temperatures averaging 11 degrees below normal, caused a similar ice dam and the consequent interior damage to petitioners' home when the temperature finally rose above freezing. We find the facts of the present case even more persuasive than those in Jackson. Accordingly, we hold that the extreme adverse weather conditions to which petitioners' home was subjected in early 1978 constitute a casualty within the meaning of section 165(a). Thus petitioners are entitled to deduct any substantiated uncompensated loss arising therefrom, to the extent *211 the loss exceeds $100. Section 165(c)(3). We also reject respondent's argument that petitioners have failed to establish the amount of their loss occasioned by the casualty. The stipulated facts set forth the total amount of payments made by petitioners for repair work done to their home after the winter of 1977-1978. The home had been repaired the previous year, so the repair work in question was clearly for damage occurring during the 1977-1978 winter. Petitioner William J. O'Neill testified that all but 10 percent of the $3,169.79 payment was to repair the damage caused by the abnormally severe weather in early 1978. We found him to be a knowledgeable, forthright and credible witness. We are satisfied that the amount of the payments for the repair work properly allocable to the casualty is $3,608.84. It is well settled that the amount paid to repair casualty damage may be accepted as evidence of the amount of a casualty loss. Respondent's own regulation sets forth the rule as follows: (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value *212 if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. Sec. 1.165-7(a)(2)(ii), Income Tax Regs.
Petitioners have clearly met their burden of proof here. The amount of the payment allocable to the casualty damage was established to our satisfaction. We do not find it to be unreasonable. Moreover, the repairs merely restored the property to its pre-casualty condition, they did not improve the property beyond its pre-casualty condition. Thus, under respondent's own regulation, petitioners have established the amount of their casualty loss. Respondent's final argument rests on an interpretation of section 165(a) which equates "compensated for" with "covered by." Under respondent's theory, any loss which is potentially covered by insurance cannot be an uncompensated loss for purposes of section 165(a), regardless *213 of whether a claim is filed and the taxpayer reimbursed. We previously considered, and rejected, this very argument in Hills v. Commissioner,76 T.C. 484 (1981), affd. 691 F.2d 997 (11th Cir. 1982). In that case, we noted both the economic and grammatical differences between "compensated for" and "covered by." As we explained: The reason for denying a loss deduction when a taxpayer's loss has been compensated (made up for or paid) is relatively easy to comprehend. The taxpayer has not sustained a true economic loss when the detrimental effects of the loss (vis-a-vis the taxpayer's net worth) are counterbalanced by the receipt of money or replacement property. However, to expand the meaning of compensated from actual to potential recoupment defies the word's acceptation. Hills v. Commissioner,supra at 487 (emphasis in original). We went on to conclude that: We are not persuaded by the argument that the petitioners' voluntary failure to file for an insurance claim signifies that the loss results from that election and not the loss event or transaction. By the same token, any theft or casualty loss suffered by *214 an individual taxpayer who voluntarily chooses not to maintain insurance coverage can likewise be said to result from the choice to forego insurance coverage. When a taxpayer fails to pursue a right of insurance recovery, his economic loss is nonetheless sustained and a deduction should be allowed. To hold otherwise would unjustifiably advantage taxpayers who voluntarily decline insurance coverage. Hills v. Commissioner,supra at 488. Despite our conclusion in Hills v. Commissioner,supra,we are obliged to follow any decision "squarely in point" where the court to which an appeal lies has passed on an issue now before us. Golsen v. Commissioner,54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). In the instant case, any appeal of our decision herein would lie to the U.S. Court of Appeals for the Sixth Circuit. That court had occasion to consider an issue similar to the current controversy in the case of Kentucky Utilities Co. v. Glenn,304 F.2d 631 (6th Cir. 1968), *215 affd. on this issue, 250 F.Supp. 265 (W.D. Ky. 1965). In Kentucky Utilities, a generator owned by the taxpayer required repairs after being damaged. The cost of repairs was potentially covered either by taxpayer's insurer or by certain warranty rights which the taxpayer claimed against the manufacturer of the generator. Business reasons precluded the taxpayer from filing aclaim for insurance reimbursement. These reasons included a desire to avoid litigation between the insurer and the manufacturer over subrogated warranty rights, as well as a fear of difficulty in retaining insurance coverage after making a claim. Therefore, the taxpayer, the insurer, and the manufacturer entered into a settlement agreement under which the taxpayer assumed more than one-third of the repair costs. Under these circumstances, no uncompensated loss was allowed as a deduction. While the subject matter of Kentucky Utilities is clearly similar to the present case, it is not so consistent as to bind us to the Sixth Circuit's determination. The additional factors of business motives and the entry into a settlement agreement, present in Kentucky Utilities but absent in this *216 case, differentiate the circumstances. As we noted in Hills v. Commissioner,supra:
We view Kentucky Utilities as distinguishable from the instant case and, in any event, in light of the brief treatment of the issue, therein, that case should not preclude a fresh consideration of this issue. Hills v. Commissioner,supra at 490. This sentiment was echoed in our decision in Miller v. Commissioner,T.C. Memo. 1981-431, vacating T.C. Memo. 1980-550. In Miller, upon facts legally indistinguishable from those in Hills, we again distinguished Kentucky Utilities and permitted a casualty loss deduction. We did so despite the fact that, as in the instant case, an appeal in Miller would lie to the Sixth Circuit. [6]
We find the legal and factual issues in the case before us are indistinguishable from those in Hills and Miller. In all three cases, potential insurance claims were left unmade *217 for fear of policy cancellation or premium increase. [7] In eachf case, an economic loss occurred which was not compensated for by insurance or otherwise. Therefore, we hold that Kentucky Utilities Co. v. Glenn,supra, is distinguishable and that our decision in Hills v. Commissioner,supra, should be followed. Accordingly, we hold that petitioners are entitled to a casualty loss deduction under section 165(a), subject to the limitation imposed by section 165(c). To reflect the foregoing, Decision will be entered for the petitioners.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners originally allocated 80 percent of the interior repairs to the ice damage; thus on their 1978 return, they deducted $3,191.86 (80 percent of the $3,169.79, or $2,535.83, plus the $756.03 of the total external repairs, less the $100.00 exclusion pursuant to section 165(c)(3)↩. At trial, credible testimony by petitioner William J. O'Neill established that the 90 percent figure was more accurate. 3. Implicit in respondent's determination is a finding that petitioners did, in fact, suffer a casualty loss. The notice of deficiency disallows petitioners' claimed deduction only to the extent the loss was covered by their homeowner insurance. Respondent has since taken the position that no casualty occurred and so no portion of the loss is deductible.↩
4. Indeed, it would be contrary to the spirit of section 165(c)(3)↩ to disallow the deduction where an otherwise qualifying casualty is compounded or prolonged. 5. See. e.g., Clapp v. Commissioner,36 T.C. 905 (1961), affd. 321 F.2d 12 (9th Cir. 1963); Klawitter v. Commissioner,T.C. Memo. 1971-289; Getz v. Commissioner,T.C. Memo. 1965-110; O'Connell v. United States, 72-1 USTC par. 9312, 29 AFTR2d 72-596 (N.D. Calif. 1972); Elliott v. United States, 67-1 USTC par. 9232, 19 AFTR2d 665 (E.D. Mo. 1966); Ferris v. United States, 62-1 USTC par. 9448, 9 AFTR2d 1414↩ (D. Vt. 1962).
6. The Sixth Circuit granted an appeal in Miller v. Commissioner,T.C. Memo. 1981-431, vacating T.C. Memo. 1980-550↩, on December 10, 1981. Decision is pending.
7. Respondent has argued that petitioners' forbearance was motivated by a failure to promptly notify St. Paul of the loss, as required by policy terms. While it is true that any insurance claim is now time-barred, we find that this circumstance is a result of petitioners' decision not to file a claim, rather than a cause thereof.↩