Dixon F. MILLER, Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 81–1717.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1983.

Decided May 2, 1984.

**400**

John F. Murray, Deputy Atty. Gen., Michael L. Paup, Asst. Atty. Gen., David English Carmack, argued, Tax Div., Dept. of Justice, Kenneth W. Gideon, Chief Counsel, I.R.S., John H. Menzel, Robert Duffy, William Wang, Washington, D.C., for respondent-appellant.

Dixon F. Miller, argued, Columbus, Ohio, for petitioner-appellee.

Before LIVELY, Chief Judge, and EDWARDS, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

This case was initially heard before a panel of this Court, which included Judges Kennedy and Wellford, Circuit Judges, and Judge Celebrezze, Senior Circuit Judge.[1] On *en banc* review, appellant Commissioner argues that *Kentucky Utilities v. Glenn*, 394 F.2d 631 (6th Cir.1968), is determinative in this tax case involving a casualty loss that was covered by insurance but which was not claimed by the insured taxpayer for fear of cancellation of his insurance policy.

The Commissioner of Internal Revenue appeals from a decision of the United States Tax Court upholding the taxpayer's claim for a casualty loss deduction pursuant to 26 U.S.C. §§ 165(a) and (c)(3).[2] The facts in this case have been stipulated by the parties. In June, 1976, a friend of the taxpayer ran the taxpayer's boat aground. The boat was damaged but to an extent less than $1,000. Although the boat was insured, taxpayer did not file a claim for recovery of the damage with his insurance company. The taxpayer's decision not to collect insurance proceeds was motivated by his fear that the submission of another claim would result in the cancellation of his insurance policies.[3] Taxpayer was able to collect $200.00 from his friend, reducing taxpayer's actual loss to $642.55. After taking into account the $100.00 limitation under 26 U.S.C. § 165(c)(3),[4] taxpayer claimed a $542.22 casualty loss deduction on his 1976 return. The Commissioner of

---

**1.** The panel issued no opinion, but suggested and initiated the hearing *en banc*. This opinion is based substantially upon a proposed version by Judge Celebrezze, who was also on the panel in *Kentucky Utilities*. Judge Celebrezze's approval has been obtained for the use of much of his rationale herein; Judge Celebrezze was not on the *en banc* court because of his status as a Senior Circuit Judge.

**2.** I.R.C. § 165(a), (c) (1954) (Amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, §§ 203(a)(b), 96 Stat. 324):

LOSSES

(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100 . . . .

**3.** Prior to December of 1974, taxpayer purchased insurance policies that covered his personal automobile, boat, and apartment. These insurance policies were almost cancelled in December of 1974 because of the number of claims that taxpayer had submitted to his insurance carrier. Taxpayer's insurance broker convinced the insurance company to impose a higher deductible, rather than cancel taxpayer's policies. Thereafter, the broker advised taxpayer that the submission of another insurance claim in the near future would result in the cancellation of all of his insurance policies.

**4.** On September 3, 1982, President Reagan signed into law the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, §§ 203(a), (b), 96 Stat. 324, which raises the floor for casualty loss deductions from $100 to 10 per cent of the taxpayer's adjusted gross income.

Internal Revenue disallowed the deduction and issued a notice of deficiency. Taxpayer filed a timely petition with the United States Tax Court challenging the Commissioner's decision to disallow the deduction. Relying on *Kentucky Utilities Co. v. Glenn,* 394 F.2d 631 (6th Cir.1968), the Tax Court concluded that the taxpayer's failure to pursue insurance proceeds barred the casualty loss deduction. The Tax Court, however, reconsidered its decision in light of *Hills v. C.I.R.,* 76 T.C. 484 (1981), *aff'd.,* 691 F.2d 997 (11th Cir.1982), and allowed the deduction.

We are now asked to determine whether a voluntary election not to file an insurance claim for a casualty loss precludes the insured-taxpayer from taking a casualty loss deduction under § 165 of the Internal Revenue Code of 1954. We are not able significantly to distinguish the issue presented in this case from that presented in *Kentucky Utilities,* and, to the extent it is contrary to our holding in this case, we overrule that decision and AFFIRM the holding of the Tax Court below.

In *Kentucky Utilities* (K.U.), a steam generator was damaged in an accident. The generator was originally sold to K.U. by Westinghouse Electric Corporation and was under warranty at the time of the accident. Based on an independent investigation, K.U. concluded that Westinghouse was responsible for the loss. Rather than jeopardize a valued business relationship by pursuing a claim against Westinghouse, K.U. sought indemnification from its insurance company, Lloyds of London. The insurance carrier did not dispute either its liability or the amount necessary to indemnify the loss. In fact, Lloyds offered to indemnify K.U. for the full amount of the damage. Because Lloyds insisted upon its right of subrogation against Westinghouse, however, K.U. refused to accept any insurance proceeds. Instead, K.U., Westing-

house, and Lloyds entered into a settlement agreement whereby Westinghouse and Lloyds agreed to compensate K.U. in the amount of $65,550.93 and $37,500.00, respectively. Pursuant to this settlement, K.U. agreed to absorb the remaining cost of repairs and proceeded to deduct the $44,486.77 on its corporate income tax return, either as a § 165 loss or as a § 23 "ordinary and necessary" business expense. The district court held that K.U.'s failure reasonably to pursue indemnification from Lloyds barred any casualty loss deduction under § 23(f) of the 1939 I.R.C.,[5] except to the extent of the $10,000 deductible provision in its insurance policy. Likewise, the district court held that K.U.'s expenditures did not constitute ordinary or necessary business expenses under § 23(e) of the 1939 I.R.C., similar to § 162 of the 1954 Code. This Court affirmed.

After our holding in *Kentucky Utilities,* the Eleventh Circuit handed down its decision in *Hills, supra.* The *Hills* court attempted to distinguish, rather than to reject, the holding of *Kentucky Utilities.* We have been unable to distinguish, however, *Kentucky Utilities* in any meaningful manner. It is true that *Kentucky Utilities* deals with a corporation and a claimed business loss akin to a § 165(c)(1) loss, while *Hills,* as well as the instant case, deal with subsection 165(c)(3) casualty loss claims by individual taxpayers (theft and shipwreck, respectively). Each situation is subject, nevertheless, to the general overriding requirement of § 165(a), whether business or individual, that a loss be "sustained … and not compensated for by insurance or otherwise." An interpretation of the code subsection under consideration, § 165(c)(3), as it pertains to a claimed individual loss, is therefore closely related to the interpretation given in *Kentucky Utilities* to the claimed business loss.[6]

---

**5.** Section 23(f) of the 1939 I.R.C. is similar to § 165(a) of the 1954 Code which applies in this case, except that it referred only to losses by corporations.

**6.** It has been asserted that corporate taxpayers and individual taxpayers engaged in a "trade or

business" or "profit-making" venture should be treated differently than non-business taxpayers, with respect to an election not to file an insurance claim, because the former are allowed to deduct the cost of insurance premiums as ordinary and necessary business expenses, I.R.C.

Judges and commentators have given differing interpretations of the holding in *Kentucky Utilities*. Generally speaking, *Kentucky Utilities* is said to set forth a two-part transaction view; it looks to the "sustained loss" clause and the "not compensated" clause of § 165. Thus, *Kentucky Utilities* can be interpreted to hold either (a) that a taxpayer must exhaust all reasonable prospects for insurance indemnification before claiming a "sustained loss," or (b) that the phrase "not compensated by" must be equated with the phrase "not covered by" insurance.[7] We now reject both of these interpretations which would preclude Miller's claim of a loss deduction under the circumstances here present.

The former interpretation must be rejected because it renders the "not compensated by" clause mere surplusage. *See Hills*, 691 F.2d at 1002. The question of whether a loss has been sustained depends upon the taxpayer's reasonable expectation of recovery from the wrongdoer. *Alison v. United States*, 344 U.S. 167, 170, 73 S.Ct. 191, 192, 97 L.Ed. 186 (1952). The

plain language of § 165(a) supports the proposition that the timing of a loss transaction must be determined *independent* of insurance consequences. Section 165(a) provides that "[t]here shall be allowed as a deduction any *loss sustained ... and not compensated* for by insurance ...." (emphasis added). To define a sustained loss with reference to potential indemnification by an insurer strips the language of § 165(a), regarding compensation, of its meaning; any time a loss is sustained it, by definition, would not be "compensated for by insurance." *Hills*, 691 F.2d at 1000–1002. In short, we believe that § 165(a) reflects the intent of Congress that the question of whether a loss is sustained should be resolved independently of any insurance consequences involved. This conclusion is bolstered by the rule of statutory construction that requires courts to construe the language of a statute so as to avoid making any word meaningless or superfluous. *See Fulps v. City of Springfield*, 715 F.2d 1088, 1093 (6th Cir.1983). In the instant case, the parties have stipulated that, at the time of the deduction, there remained no reasonable prospect of

---

§ 162 (1954) and I.R.C. § 23(a) (1939), while no such deductions are allowed under either the 1939 or 1954 Codes for insurance premiums paid by non-business individuals. *See Hills*, 691 F.2d at 1008–1009 (Hatchett, J., dissenting). We do not necessarily agree that it results in a windfall or "double-dip" *to allow businesses to* deduct both insurance premiums and § 165 losses. As a practical reality,

[m]ost businesses are required by law, or at least by contract, to carry insurance. However, they often cannot use their insurance because, if it is cancelled, they will either have to self-insure or cease doing business. The majority of businesses do not have the ability to self-insure, as that entails placing needed capital out of reach. It was [Judge] Hatchett's opinion that the Code requires a practical interpretation that does not produce an "absurd result." The most absurd result, however, would be to put the taxpayer out of business.

Summers, "Loss Deductions: The Effect of Failure to File an Insurance Claim after *Hills*," *Taxes*, April 1983 at 282–283.

**7.** *See* Samsel, *"Hills v. Commissioner:* The Meaning of "Compensated for by Insurance' in Internal Revenue Code Section 165(a)," 43 Ohio St.L.J. 513 (1982). At page 519, Samsel states:

With respect to *Kentucky Utilities,* the *Hills* court admitted that an insured loss is equivalent to one "covered" by insurance, but added that this "is not the statutory language before us." The implication of the *Kentucky Utilities* holding is quite clear, however. Because the loss was not an "uninsured loss," by affirming the district court's view that it was not a loss "not compensated for by insurance or otherwise" the Sixth Circuit equated "insured" with "compensated." Therefore, if "insured" is equivalent to "covered," then *Kentucky Utilities* stands for the proposition that "covered" is equivalent to "compensated."

On the other hand, this Court's *Kentucky Utilities* decision dealing with the question of whether an uncompensated loss was deductible was described as "a rather terse opinion" by Professor Summers in *Taxes*, April 1983 at 277, but it was further described as "the *genesis* of a theory that the taxpayer may not elect to forego an insurance claim and deduct his loss ...." *Id.* at 276. (emphasis added). *Compare Hills,* 691 F.2d at 1002–1004, and the differing interpretation of *Kentucky Utilities* by various members of the Tax Court in *Axelrod v. Commissioner,* 56 T.C. 248 (1971). *Compare also* Tripp & Vogel, "Unreimbursed Insured Casualty Losses After *Hills*," *Taxes*, February 1962 at 154, 156, 158.

recovery from the wrongdoer. Thus, we conclude that the taxpayer has sustained a loss in a "closed transaction" [8] during the taxable year.

■ We likewise reject *Kentucky Utilities* for the proposition that "not compensated by" means "not covered by." Such an interpretation of the language of § 165 is inconsistent with the plain meaning of the word "compensated." Absent unusual circumstances, we are bound to apply the plain meaning of a statute. *Hills*, 691 F.2d at 1000. Moreover, legislative history, scant though it is, does not support an interpretation of § 165 that equates "not compensated by" with "not covered by." As the court in *Hills* noted:

> The initial House Ways and Means Committee language was "losses ... not covered by insurance or otherwise and compensated for." The Senate Finance Committee amended the language to its final and enacted form of "losses ... not compensated for by insurance or otherwise."

The footnote to this paragraph provided:

> "*13.* *See* J. Seidman, Seidman's Legislative History of Federal Income Tax Laws, 1938–1961, at 1018 (1938). There was no Finance Committee report for this bill. *See also* Comment, *Theft Loss Deductions as Relief for the Small Investor*, 1978 Duke L.J. 849, 860–61 & nn. 67, 68 (discussing and citing sources for limited legislative history of § 165(c)(3))."

*Hills*, 691 F.2d at 1000.

We agree with the Tax Court's conclusion in *Hills v. Commissioner*, 76 T.C. 484, 487, after its analysis of the legislative history:

> [A]ll losses compensated by insurance are also, as a necessary concomitant, covered by insurance; nonetheless, it should be equally obvious that the converse, i.e. that all losses covered by insurance are

also compensated for, is not necessarily true.

*See also Hills*, 691 F.2d at 1006: " 'Compensated' is a word distinct from 'covered'."

It should also be pointed out that the only case relied upon in *Kentucky Utilities* for disallowing the claimed deduction as not an "insured loss" was *Sam P. Wallingford Grain Corp. v. Commissioner of Internal Revenue*, 74 F.2d 453 (10th Cir. 1934). The *Wallingford* case did not involve insurance at all, nor any casualty loss; rather, it involved the voluntary payment by a corporation of a predecessor concern's debt that was not assumed by the taxpayer. This was held not to be a payment giving rise to a loss "compensated for by insurance or otherwise" under § 23(f), 26 U.S.C. § 2023 (Revenue Act of 1928). *Wallingford* may have been pertinent for its holding that this voluntary payment was also not an ordinary or necessary expense under § 23(c) of that same Act but it does not appear relevant to the insurance issues in the instant case.

Courts which have held to the contrary generally have reasoned by analogy. *See Jewell v. Commissioner*, 69 T.C. 791 (1978) (where the Tax Court analogized to medical expenses not compensated by insurance or otherwise under 26 U.S.C. § 213(a)); and *Heidt v. Commissioner*, 274 F.2d 25 (7th Cir.) *aff'g.*, 18 T.C.M. (CCH) 149 (1959) (where the Tax Court analogized that no ordinary and necessary business expense can be claimed under § 162(a) for the personal use of an automobile in connection with business when reimbursement is available from the employer).

■ When the language of a statute is clear, as in this case, one need not resort to analogy. Congress has simply elected to treat seemingly analogous situations differently for underlying policy reasons. We

---

**8.** A loss must be "sustained in a closed transaction during the taxable year" before a § 165(a) deduction is available. *Stivers v. C.I.R.,* 360 F.2d 35, 40 (6th Cir.1966). The closed transaction doctrine is a timing principle that also requires that the gain or loss from a particular transaction be ascertained. *Burnet v. Logan,* 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931). This same principle applies to casualty loss deductions: as long as a reasonable expectation of recovery from the wrongdoer exists, the taxpayer's loss is not ascertained; thus, no loss has been sustained.

conclude that Congress limited the availability of § 165 deductions to "losses not compensated for by insurance or otherwise" to avoid double compensation for taxpayers who in fact had received indemnification from their insurers. This interpretation is supported by Treas.Reg. § 1.165–1(c)(4) [26 C.F.R. § 1.165–1(c)(4) ] (emphasis added),

> In determining the amount of loss actually sustained for purposes of section 165(a), proper adjustment shall be made for any salvage value and *for any insurance or other compensation received.*

Because Treas.Reg. § 1.165–1(d)(2)(i) [26 C.F.R. § 1.165–1(d)(2)(i) ] speaks of "a claim for reimbursement with respect to which there is a reasonable prospect of recovery," some courts have relied upon it to support the contrary proposition that "not compensated by" means "not covered by." When taken as a whole, however, we believe Treas.Reg. § 1.165–1(d)(2)(i) also supports our conclusion that "not compensated by" means not having actually received indemnification.[9]

The plain language of § 165, its legislative history, and the interests of public policy all support the conclusion we reach today. It should be noted that to hold otherwise would unjustifiably work to the disadvantage of taxpayers, not engaged in business, who voluntarily decline insurance indemnification for sound and practical reasons not primarily motivated by tax considerations, such as appellee. To hold otherwise would also work to the indirect advantage of taxpayers who, for whatever reasons, decline to obtain any insurance coverage at all to protect themselves from casu-

alty, and then claim an uncompensated loss as deductible if a casualty occurs.

The Eleventh Circuit's observation in *Hills* that "[t]he disposition the Commissioner favore[d] in this case would deny a section 165 deduction any time a loss is covered by insurance," 691 F.2d at 1000, would apply equally here. Such a disposition, that of the *Kentucky Utilities* case that there was no "insured loss," does not comport with the plain and clear meaning of this section of the Internal Revenue Code in light of the legislative history pointed out. We agree with the *Hills* court in its ultimate holding: "Section 165(a) allows a deduction for an economic detriment that (1) is a loss, and (2) is not compensated for by insurance or otherwise." *Id.*

Accordingly, our prior decision in *Kentucky Utilities* is overruled to the extent it is interpreted as denying any taxpayer in the posture of Miller a deduction under 26 U.S.C. §§ 165(a) and (c)(3), and the judgment of the Tax Court is AFFIRMED.

CONTIE, Circuit Judge, with whom LIVELY, Chief Judge, and GEORGE CLIFTON EDWARDS, Jr., KEITH and NATHANIEL R. JONES, Circuit Judges, join, dissenting.

Although I agree with the majority that the question presented by this case is indistinguishable from the first issue discussed in *Kentucky Utilities Co. v. Glenn,* 394 F.2d 631 (6th Cir.1968), and although I further agree with the majority that the phrase "not compensated for by insurance or otherwise" in 26 U.S.C. § 165(a) may not properly be construed to mean "not covered by insurance or otherwise," I neverthe-

9. Treas.Reg. § 1.165–1(d)(2)(i) provides:
 If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss

is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.

less remain convinced that the first holding of *Kentucky Utilities* should not be overruled. Accordingly, I dissent.

I do so for three reasons, the first of which is that the taxpayer's voluntary choice not to file an insurance claim, a claim which the parties stipulate the insurer would have paid, prevented a loss from being sustained under § 165(a).[1] The majority admits that the taxpayer's election to forego insurance benefits was a voluntary decision. For instance, the majority states the issue in this case as "whether a voluntary election not to file an insurance claim for a casualty loss precludes the insured-taxpayer from taking a casualty loss deduction under § 165 of the Internal Revenue Code of 1954." *Ante.* at 401. Although voluntary assumptions of economic detriments have been held not to result in deductible losses in analogous situations such as those involving bad debts, *see, e.g., Roth Steel Tube Co. v. Commissioner of Internal Revenue*, 620 F.2d 1176, 1181 (6th Cir.1980), the majority holds that Congress "simply elected to treat seemingly analogous situations differently for underlying policy reasons." *Ante.* at 403. I cannot agree with the majority's conclusion.

In determining whether a voluntary election not to file an insurance claim prevents a loss from being sustained for purposes of § 165(a), one must distinguish between the casualty, which causes damage, and the loss, if any, resulting from this casualty. The language of certain subsections of § 165, the language of a relevant interpretative regulation and the case law all support the conclusion that the concepts of casualty and loss are distinct.

The version of § 165(c)(3) applicable to this case states in pertinent part:

LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

(3) Losses of property not connected with a trade or business, *if such losses arise from fire, storm, shipwreck, or other casualty,* or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of *the loss to such individual arising from each casualty,* or from each theft, exceeds $100.00. [Emphasis supplied.]

Since a loss "arises from" an antecedent casualty under this language, the former term is not identical to the latter. The wording of 26 C.F.R. § 1.165–1(d)(2)(i), a Treasury Regulation, is of similar import. This regulation concerns "a casualty or other event ... *which may result in* a loss ..." (emphasis supplied). The words "may result in" are instructive. Since a loss may, but need not, follow a casualty, the two concepts clearly are distinct.

The case law is equally clear on this point. In *Alison v. United States*, 344 U.S. 167, 170, 73 S.Ct. 191, 192, 97 L.Ed. 186 (1952), the Supreme Court held that "the terms embezzlement and loss are not synonymous. The theft occurs, but whether there is a loss remains uncertain."[2] Thus, a casualty can occur without a loss subsequently being sustained. *See also Ramsay Scarlett and Company, Inc. v. Commissioner of Internal Revenue*, 61 T.C. 795, 808 (1974), *aff'd*, 521 F.2d 786 (4th Cir. 1975); *Allied Furriers Corp. v. Commissioner of Internal Revenue*, 24 B.T.A. 457, 460 (1931).

A voluntary election not to recover insurance benefits prevents a casualty from becoming a sustained loss because the causal connection between the two events is severed. The alleged loss results not from "one of the circumstances listed in section

---

**1.** As indicated by the majority, a loss must be both "sustained" and "not compensated for by insurance or otherwise" in order to be deductible under § 165(a). While acknowledging that the taxpayer has not in fact been compensated for $642.55 worth of damages to his boat, this dissent contends that the taxpayer has not sustained a loss for purposes of § 165(a).

**2.** The rationale underlying this distinction will be discussed in greater detail *infra.* Although *Alison* is a theft case rather than a casualty case, the language of both § 165(c)(3) and § 165(e) indicates that this difference does not render *Alison* inapposite.

165(c)(3) ... but rather [from] the insured's own election not to accept reimbursement under his insurance policy, a separate identifiable event." *Hills v. Commissioner of Internal Revenue*, 76 T.C. 484, 493 (1981) (Sterrett, J., dissenting). *See also Axelrod v. Commissioner of Internal Revenue*, 56 T.C. 248, 261 (1971) (Quealy, J., concurring); *Bartlett v. United States*, 397 F.Supp. 216, 218–20 (D.Md.1975); *Morgan v. Commissioner of Internal Revenue*, 47 T.C.M. ¶ 78,116 (1978).[3]

The responses to this analysis found in the Tax Court's majority opinion in *Hills* are unconvincing. First, the Tax Court noted that uninsured persons who suffer casualties are entitled to deduct their resulting losses. The court then held that insured persons who elect not to use their insurance in given situations are entitled to identical tax treatment because any economic detriment "suffered by an individual taxpayer who voluntarily chooses not to maintain insurance coverage can likewise be said to result from the choice to forego insurance coverage." *Hills*, 76 T.C. at 488. The court thus equated the voluntary choice not to obtain insurance coverage to the voluntary election not to file a valid insurance claim after a particular casualty occurs.

One problem with this argument is that § 165 refers only to the situation as it exists at the time of, and after, the casualty. Events and decisions preceding the casualty are simply irrelevant. Moreover, a great difference exists between not obtaining insurance coverage against highly contingent future occurrences and deliberately refusing a full recovery, at the expense of the federal Treasury, in the face of an actual casualty. In the latter situation, voluntarily choosing not to file a valid insurance claim should operate as a waiver of any form of compensation, including a tax deduction, for damages caused by the casualty. The purpose of § 165 is to allow a deduction for substantial uncompensated losses that are non-volitional in character. *Hills*, 76 T.C. at 492 (Sterrett, J., dissenting); *see also Axelrod*, 56 T.C. at 263 (Quealy, J., concurring); *Bartlett*, 397 F.Supp. at 218. Since uninsured taxpayers have no choice but to bear any losses resulting from casualties, they should receive a deduction. Insured taxpayers, who have the present option to avoid losses, should not receive similar treatment.

Second, the Tax Court analogized the present situation to 26 C.F.R. § 1.165–1(d)(2)(i), which permits a taxpayer to deduct unrecompensed losses after litigation initiated in order to recover such losses has been settled or abandoned. The court noted that although the decision to settle or abandon litigation is voluntary, a loss deduction for unrecouped damages is nevertheless available in these situations. *Hills*, 76 T.C. at 488–89.

The analogy between settling or abandoning litigation and voluntarily refusing to file insurance claims is strained. Pragmatic considerations, such as the time and hardship involved in litigation and the cost of litigation compared to the eventual recovery, *id.* at 489, may influence a prospective litigant to settle or abandon a claim. These factors should not become operative, however, until *after* the insurer has denied a filed claim and until litigation is contemplated. There simply is no justification for voluntarily electing not even to file a claim when the insurer may pay it in full. Indeed, the parties in the present case have stipulated that the insurer would have paid the taxpayer's entire claim had he chosen to file. A clear inference from this stipulation is that the taxpayer would not have encountered undue expenditures of time, effort or money in obtaining compensation. Hence, the Tax Court's analogy to the settlement and abandonment provisions of 26 C.F.R. § 1.165–1(d)(2)(i) is flawed.

A second reason for concluding that the taxpayer in this case sustained no loss for

---

**3.** Both *Bartlett* and *Morgan* have been cited for the now discredited proposition that "compensated for by insurance or otherwise" in § 165(a) means "covered by insurance or otherwise."

The cases are cited here only for their remarks concerning the voluntariness issue and not for their construction of the phrase "compensated for by insurance or otherwise."

purposes of § 165(a) is that the transaction was not closed and completed. Although the closed and completed transaction requirement is a product of the Treasury Regulations rather than of the statute itself, *see* 26 C.F.R. § 1.165–1(b), the courts have long upheld the doctrine. *See, e.g., United States v. S.S. White Dental Manufacturing Co.*, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927); *Ramsay Scarlett & Co.*, 61 T.C. at 807, *aff'd*, 521 F.2d 786. Whether a casualty transaction is closed and completed depends upon the reasonable prospects of eventual recoupment. *See S.S. White Dental*, 274 U.S. at 402–03, 47 S.Ct. at 600; *Estate of Scofield v. Commissioner of Internal Revenue*, 266 F.2d 154, 159–60 (6th Cir.1959); *Commissioner of Internal Revenue v. Harwick*, 184 F.2d 835 (5th Cir.1950). The requirement that reasonable prospects of recovery must be exhausted before a transaction may be considered closed and completed was most forcefully stated in the *Ramsay Scarlett & Co.* case:

> One of the essential inquiries under the "closed transaction" concept has been whether, in the year the deduction is sought, there existed a substantial possibility that the alleged losses could be recouped by actions against responsible third parties or otherwise.

61 T.C. at 807, *aff'd*, 521 F.2d 786. A reasonable prospect for recovery exists:

> When the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor.

*Id.* at 811. Since the taxpayer in the present case possessed a bona fide claim against the insurer which would have been paid, he had a reasonable prospect for recovery which he was required to exhaust under the closed and completed transaction doctrine.

It bears emphasis that this circuit has required the exhaustion of reasonable prospects of recovery at least since the *Estate of Scofield* case was decided in 1959. The majority opinion substantially narrows the exhaustion requirement. Specifically, the majority holds, in reliance upon language in *Alison v. United States*, that in order for a closed and completed transaction to exist, the taxpayer need only have exhausted reasonable prospects of recovery against the wrongdoer and not against third party insurers:

> Furthermore, the terms embezzlement and loss are not synonymous. The theft occurs, but whether there is a loss may remain uncertain. One whose funds have been embezzled may pursue the *wrongdoer* and recover his property in whole or in part. [Emphasis supplied.]

*Id.* at 170. The issue discussed in *Alison* was whether terms such as "theft" and "casualty" are synonymous with the term "loss." In answering this question, the Supreme Court stated that the mere occurrence of a casualty does not constitute a loss because compensation might be available from the wrongdoer. Nevertheless, the court was not asked to decide, and it did not decide, whether exhaustion of reasonable prospects of recovery against wrongdoers *alone* would create a closed and completed transaction if insurance benefits were available. The issue of a duty to file insurance claims simply was not presented.

Decisions such as *S.S. White Dental* and *Estate of Scofield* require exhaustion of reasonable prospects of recovery without distinguishing between wrongdoers and third parties such as insurers. Moreover, the section of the Treasury Regulations which uses the phrase "reasonable prospect of recovery" does not mention such a distinction. *See* 26 C.F.R. § 1.165–1(d)(2)(i). None of these sources indicates that a taxpayer need exhaust only "some" reasonable prospects of recovery. Finally, the Fourth Circuit rule articulated in *Ramsay Scarlett & Co.* and the Fifth Circuit standard stated in *Harwick* both expressly require exhaustion of reasonable prospects of recovery against insurers. Under these circumstances, the majority has improperly limited the scope of the exhaustion rule.

The majority also holds, in reliance upon the Eleventh Circuit's opinion in *Hills*, 691 F.2d at 1002, that if a taxpayer must exhaust reasonable prospects of recovery against insurers in order to have a sustained loss under § 165(a), then the phrase "and not compensated for by insurance or otherwise" is rendered surplusage. *Ante.* at 402. As I read the majority's opinion, the point is that § 165(a) requires that two conditions be met before a deduction is permitted: (1) that a loss be sustained and (2) that this loss not be compensated for by insurance or otherwise. The majority argues that if the taxpayer must show that no compensation was either available or received (the second element) in order to demonstrate a sustained loss (the first element), then as a practical matter the second condition is deprived of meaning. Although this argument has force, adopting it creates a fundamental, though at first glance unapparent, conflict between § 165(a) and § 165(c)(3).[4]

As has been indicated, § 165(c)(3), the relevant Treasury Regulation and the case law establish that the terms "casualty" and "loss" are not synonymous. The question, therefore, is by what mechanism the former is transformed into the latter. Under the approach being taken in this opinion, exhausting reasonable prospects of recovery after a casualty occurs and emerging from that process with unrecompensed damages creates a loss. The majority is precluded from adopting this mechanism in view of the holding that reasonable prospects of recovery must not be considered in defining what constitutes a loss. For the majority, a sustained loss under § 165(a) and the occurrence of a casualty are the same thing. This is so because no mechanism for transforming a casualty into a

§ 165(a) loss is present. The majority opinion, therefore, equates the terms "loss" and "casualty" for purposes of § 165(a) even though the same terms are not synonymous for purposes of § 165(c)(3) and even though the case law expressly holds that the two terms do not mean the same thing.

Furthermore, the majority may not use as its mechanism for transforming a casualty into a § 165(a) loss the requirement that the taxpayer exhaust reasonable prospects of recovery against the wrongdoer. The final phrase of § 165(a) reads "and not compensated for by insurance *or otherwise*" (emphasis supplied). Obtaining compensation from the wrongdoer surely is comprehended by the "or otherwise" language. Although it holds to the contrary, the majority, under its analysis of § 165(a), may not properly require the taxpayer, in demonstrating that a loss has been sustained, to prove exhaustion of reasonable prospects of recovery against the wrongdoer. In the language of the Eleventh Circuit's decision in *Hills*, recoupment from the wrongdoer is part of the "compensation phase" of § 165(a) rather than the "loss phase" of that subsection. 691 F.2d at 1001. Under the majority's analysis, defining the term "loss" with reference to reasonable prospects of recovery against the wrongdoer should be just as wrong as defining that term with reference to reasonable prospects of recovery against the insurer.[5]

In short, this court faces a choice between two evils. Either a conceptual conflict must be created between § 165(a) and § 165(c)(3) or a phrase within § 165(a) must be construed in such a way as to render it superfluous. Although one might reasonably assert that the rule of construction

---

**4.** As the ensuing analysis demonstrates, the majority's approach also establishes a conflict between § 165(a) and § 165(e).

**5.** The *Hills* court may have committed the same error as the majority makes in this case when it stated that recovery from a thief is part of the "loss phase" of § 165(a) rather than the "compensation phase." 691 F.2d at 1001. If the court meant recovery of monetary compensation from a thief, then the court erred. Such

recoupment is comprehended by the "or otherwise" language of the last phrase of § 165(a). On the other hand, if the court meant return of the stolen property by the thief, then the court was correct. That situation does not involve compensation. The present case, of course, involves compensation. The damage to the taxpayer's boat could only be remedied by recovering money.

favoring avoidance of an outright conflict within a statutory provision outweighs the rule against construing part of that language in a manner so as to render it superfluous, it may be assumed *arguendo* that the policies underlying the two rules of construction are evenly balanced. Even in the latter situation, the principle of *stare decisis* counsels this court not to abandon one imperfect construction of § 165 in favor of another. Since the statute under review is inherently flawed, Congress should amend it if Congress dislikes the construction which the courts, including this court, have traditionally placed upon it.[6]

A third reason for questioning the majority's conclusion is that it results in preferred tax treatment for business taxpayers. The majority's holding allows business taxpayers to "double-dip." Since business taxpayers are comprehended by the decision in this case, *ante* at 401–02, they will be able to deduct both their insurance premium costs and their unrecompensed casualty damages for which reasonable prospects of recovery exist. I am of the opinion that the majority's brief treatment of this issue, *ante* at 401 n. 6, inadequately responds to the concerns expressed by Judge Hatchett, who dissented from the Eleventh Circuit's opinion in *Hills*. 691 F.2d at 1008–09.

Moreover, the Tax Equity and Fiscal Responsibility Act of 1982 raised the floor for nonbusiness taxpayer casualty loss deductions from $100 to the greater of $100 or ten per cent of a nonbusiness taxpayer's adjusted gross income. 26 U.S.C. § 165(h). Although the decision in this case will be of great significance to all business taxpayers, it will be of little or no benefit to numerous individual taxpayers. I am deeply troubled by such a disparate practical result.

Accordingly, I would reaffirm the first holding in *Kentucky Utilities* and would reverse the judgment of the Tax Court.

---

**6.** Indeed, the majority's decision is philosophically inconsistent with the most recent amendment to § 165. While the majority's approach will result in wider availability of § 165 deductions for certain taxpayers, the newly enacted § 165(h) is designed to limit § 165 deductions for nonbusiness taxpayers. *See infra.* Thus, Congress has indicated a preference for restricting, rather than expanding, the availability of § 165 deductions.