WILLIAM H. AND BRENDA H. GOVIER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Govier v. Commissioner
Docket No. 36516-87
United States Tax Court
T.C. Memo 1990-611; 1990 Tax Ct. Memo LEXIS 684; 60 T.C.M. (CCH) 1348; T.C.M. (RIA) 90611; December 5, 1990, Filed *684 Decision will be entered under Rule 155. Gwen D. Skinner, for the petitioners. Helen C. T. Smith, for the respondent. KORNER, Judge. KORNER
*1959 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1982
$ 5,024.25
$ 251.21
50% of interest
due on $ 4,064.00
1983
1,750.00
87.50
50% of interest
due on $ 1,750.00
1984
9,097.00
454.85
50% of interest
due on $ 9,097.00
*687 After concessions, the issues for decision are: (1) whether petitioners are entitled to deduct as employee business expenses unreimbursed automobile mileage expenses; (2) whether respondent erroneously determined the percentage of business use of petitioners' automobile for purposes of depreciation, a section 179 expense deduction, and an investment tax credit; (3) whether petitioners properly elected to capitalize the taxes and carrying charges incurred in purchasing an automobile; and (4) whether petitioners are liable for section 6653(a)(1) and (2) additions to tax for all three years at issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached are incorporated herein by this reference. Petitioners, husband and wife, resided in Metairie, Louisiana, when they filed their petition. They filed timely joint Federal income tax returns for tax years 1982, 1983, and 1984. References to petitioner in the singular are to William H. Govier. During the years at issue petitioner served as a special agent with the Internal Revenue Service, Criminal Investigation Division (hereinafter CID), in the New Orleans District. *688 Petitioner's duties generally involved planning and conducting investigations relating to suspected violations of the Internal Revenue Code's criminal laws, e.g., tax fraud. While petitioner had a basic knowledge of tax law, his position primarily required a knowledge of investigative techniques, the rules of evidence, the rules of criminal procedure, and related court decisions. The New Orleans District CID has enforcement responsibility for the entire State of Louisiana. CID is headed by the Chief, CID, and is broken down into four groups of special agents. Each group is in turn headed by a group manager. Petitioner was a member of one of the two groups that had responsibility for the City of New Orleans. He was considered one of his group's best special agents and would serve as Acting Group Manager, and at times Acting Chief, in his supervisors' absences. Because of the nature of his job, petitioner was on premium pay for administratively uncontrollable overtime. This pay status meant that petitioner was on call virtually 24 hours per day. Special agents normally spend over half their time outside their offices gathering information for their cases. CID maintained *689 a pool of government owned automobiles (GOAs) for their use. However, CID had a shortage of GOAs during the years at issue. Special agents could also request permission from their group manager to use their privately owned automobiles (POAs) to perform their duties. To use their POAs, permission had to be requested daily and in advance of use. Use of POAs was reimbursable at a specified rate per mile, which varied in amount depending on whether a GOA was available when the POA was used. To obtain reimbursement, agents filled out travel vouchers and submitted them to the group manager who approved them before sending them to the regional office for final approval and payment. Technically, special agents could not be ordered to use their POAs, and their job performance evaluations could not be based on this criterion. In reality, however, special agents were forced to use their POAs. Due to the shortage of GOAs, a special agent at times had to wait two days or longer before a GOA became available. This delay was not always acceptable; evidence could surface that required the agent's immediate attention. In this regard, in describing a special agent's qualified overtime, the *690 Internal Revenue Manual provided that "failure to seize limited opportunities to examine [evidence] could be considered negligence on the part of the investigator(s) concerned." Thus, while special agents were only evaluated on whether they did their job, they might need their POA to do it. At various times throughout the applicable years the Internal Revenue Service endured *1960 severe budget crises. Management of CID's budget was the responsibility of the Chief. The Chief provided policy and on more than one occasion informed the group managers under him that no special agent could be given authority to use his POA. During 1982, 1983, and the early part of 1984, petitioner's group manager was Harold L. Whipple (Whipple). Upon receiving policy and guidance concerning the budget from the Chief, Whipple regularly told his group's special agents that all unessential travel would have to be curtailed. By Whipple's informing them of the budget restraints, the agents in his group knew that they might incur mileage on their POAs for which they would not be reimbursed. However, there is no evidence that any agent was actually denied reimbursement when a travel voucher was submitted. *691 Because of the budget restraints and the inferences he received from his supervisors, petitioner believed he would not be reimbursed for all the mileage he incurred on his POA. Petitioner therefore did not request reimbursement for all of his incurred mileage. Instead, petitioner claimed what he thought was appropriate on his travel voucher and recorded the remainder in his daily diary. As part of his job, petitioner was required to maintain a daily diary. Daily entries in his diary generally provided the date, a number for the case he was working on, and the location (if it was outside New Orleans). In addition, a number designated "uem" occurs on the pages of some days in the 1982 diary, and a number with no designation occurs on the pages of some days in the 1983 and 1984 diaries. [2] Petitioner's explanation was that these entries were mileage incurred for a business purpose for which he did not receive reimbursement. At the end of each year, petitioner added the amounts of mileage from his reimbursed travel vouchers with the amounts of unreimbursed mileage written in his daily diary to determine his total business miles, which resulted in the following: Reimbursed Unreimbursed Total Business Year
Mileage
Mileage
Mileage
1982
9,400
4,867
14,267
1983
6,973
7,157
14,130
1984
519
9,081
9,600
*692 Petitioner claimed, as an ordinary and necessary business expense for each year, a deduction equal to the amount allowable for his total business miles less the amount he had already received as reimbursement. Respondent denied the deductions for the alleged unreimbursed mileage for all three years. In 1981, Congress made significant changes to Internal Revenue Code sections addressing tangible personal property used in a trade or business. Among these changes were the allowance of an accelerated *693 cost recovery system under section 168, the expense deduction under section 179, and the investment tax credit for section 38 property. A major topic of discussion among several special agents at this time was whether they could take advantage of these provisions by purchasing an automobile and then devoting it 100 percent to business use. Some special agents, petitioner included, even went so far as to ask revenue agents [3] their opinion on this matter. Petitioner was advised that it could be done. In November of 1982, petitioner purchased a 1983 Oldsmobile Toronado intending to use it 100 percent for business purposes. Before purchasing the car, petitioners agreed among themselves not to use the Toronado for personal transportation. They owned two other cars and petitioners were the only drivers. Petitioner placed the Toronado in service on December 1, 1982. The Toronado was parked at petitioners' home, and would only *694 be driven to New Orleans (approximately five miles away) when petitioner had a business reason for using the vehicle. Petitioner still used GOAs when they were available. From the table designating total business mileage noted above, all the mileage for the first 11 months of 1982 was incurred on one of petitioners' other two cars. On his return for 1982, petitioner stated that he drove the Toronado 340 miles in December 1982 and all of that mileage was unreimbursed. Petitioner's daily diary reflects that the 340 miles were incurred by driving the Toronado on six days in December. All of the mileage for 1983 and 1984 was incurred on the Toronado. Of the 7,157 unreimbursed miles incurred in 1983, petitioner's daily diary shows that 5,287 of these miles were incurred by driving the Toronado on 69 days throughout the year. The daily diary does not explain when the remaining 1,870 miles *1961 were incurred. [4] In 1984, petitioner's 9,081 unreimbursed miles were incurred by driving the Toronado on 110 days throughout the year. *695 In 1982, petitioner claimed a deduction for depreciation and an expense deduction under section 179 for using the Toronado 100 percent for business purposes. He also claimed an investment tax credit. Respondent disallowed all these expenses for the same reason that he disallowed the unreimbursed mileage noted above: petitioner failed to establish that he expended any amount for ordinary and necessary expenses in excess of the reimbursement received. Respondent's notice determined that petitioner had a 0 percent business use of the Toronado by dividing the amount of reimbursed miles in December 1982 (0) by the total number of miles driven in December 1982 (340). For 1983 and 1984, respondent used this same reimbursed mileage versus total mileage analysis to determine that petitioner used the Toronado for business purposes 49 percent and 5 percent, respectively. Respondent then determined petitioner was eligible for depreciation deductions for 1983 and 1984 based on this percentage of business use. For purposes of the depreciation deductions and the investment tax credit, petitioner listed the Toronado's basis as $ 23,287.52 on his 1982 return. Petitioner computed this basis *696 figure from the Act of Sale which provides: Cost of Toronado
$ 17,860.00
Plus: G.M.A.C. Continuous
Protection Plan
550.00
Plus: Recordation Fee
2.00
Plus: License & Registration Fee
8.00
Plus: Title Fee
7.00
Plus: Finance Charge
4,860.52
Total
$ 23,287.52
Respondent recomputed petitioners' basis in the Toronado to be $ 17,860 (purchase price), determining that petitioner did not properly capitalize any of the other amounts. [5]
On October 17, 1988, petitioner submitted supplemental travel vouchers for his alleged amounts of unreimbursed *697 mileage for 1982, 1983, and 1984. The supplemental vouchers were accompanied by an affidavit signed by Whipple stating that they were correct, and were approved on this basis by the group manager in charge of petitioner at that time. They were then forwarded through the Chief's office to the regional office. The regional office reimbursed petitioner for this unclaimed mileage except for mileage incurred during the first eight months of 1982, which was not paid due to the six fiscal year period of limitations for claiming travel expenses. Respondent now contends that payment of these supplemental claims was improper. Petitioners also made several concessions concerning their 1982, 1983, and 1984 tax returns. While these concessions are no longer at issue, they are relevant to the issue of negligence. In 1982, petitioners conceded they took an erroneous $ 256.92 deduction for Other Business Expenses on their Form 2106 when the deduction should have been reported as an itemized deduction. Petitioners conceded the disallowance of a deduction for alimony payments in the amount of $ 559 in tax year 1983 because they were not paid pursuant to a court order. In 1984, petitioners *698 conceded they overstated depreciation on rental property. The overstatement was due to a math error. Also in 1984, petitioners conceded they were not entitled to an investment tax credit on rental real property. OPINION Petitioners have the burden of proof in overcoming the grounds set forth in respondent's notice of deficiency. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). 1. Section 162 Deduction for Mileage Incurred The first issue we must decide is whether petitioner is entitled to deduct as business expenses his unreimbursed mileage expense. Generally, section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Performance of services as an employee constitutes a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988). Therefore, petitioner is entitled to a deduction if he can prove, inter alia, that his expense for mileage was an ordinary and necessary expense *699 of his employment. An expenditure is considered "necessary" if it is appropriate and helpful to the employee's trade or business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). However, an employee's expense is not considered necessary if it is reimbursable and the employee fails to seek reimbursement. Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. 326 F.2d 760 (2d Cir. 1964). The availability of reimbursement *1962 renders an expense deduction unnecessary, even if the employee had no knowledge that the expense was reimbursable by the employer. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affirming a Memorandum Opinion of this Court. We hold that petitioner has failed to meet his burden of proving that he had a necessary business expense. He failed to prove that either all or a discernable portion of his unclaimed mileage was not reimbursable. In making this determination, we note that at times special agents may have incurred business mileage which was ineligible for reimbursement. Special agents were forced to use their POAs in order to do their job, yet at times CID would not *700 "authorize" them to use their POAs so as to enable them to receive reimbursement. However, we are unable to find that this petitioner actually did incur nonreimbursable mileage, let alone that the amount was accurately measured by petitioner's method of claiming mileage. CID's policy of not "authorizing" POA use would lead us to expect that at times 100 percent of incurred mileage would be nonreimbursable. However, with nothing other than vague time frames as to when the various budget crises occurred, petitioner has given us no reasonable basis to conclude that he even drove his automobile when reimbursement was unavailable. Additionally, because petitioner did not have any of his travel vouchers rejected by CID, we have no reasonable basis to conclude that petitioner was correct in his belief that reimbursement would be denied. Petitioner relies on Kessler v. Commissioner, T.C. Memo. 1985-254, where we held that an FBI Agent had nonreimbursable mileage because of management discretion in denying reimbursement. However, in that case we determined that the taxpayer "actually" had nonreimbursable expenses, even though he had not appealed the denial of reimbursement, *701 while in petitioner's we are unable to make that determination. The deciding factor is not whether petitioner "believed" he could not get reimbursement; rather, it is whether he "actually" could not get reimbursement. See Orvis v. Commissioner, supra.
Because petitioner has failed to meet his burden of proving that any portion of his incurred mileage was nonreimbursable, we need not address respondent's alternative argument that petitioner did not properly substantiate his claimed mileage. Respondent's determination that no deduction is available for unreimbursed mileage is upheld. 2. Business Usage of the Toronado The next issue for our determination is whether respondent erred in determining the percentage of business use of petitioner's 1983 Toronado. A. Section 168 Depreciation Section 168 allows accelerated depreciation for certain types of recovery property, including automobiles, used in a trade or business. Secs. 168(a); 168(c). Petitioner claimed depreciation deductions for tax years 1982, 1983, and 1984 based on 100 percent business use of *702 the Toronado. In his notice, respondent considered all of petitioner's deductions together and determined that petitioner failed to establish that he expended any amount for ordinary and necessary expenses in excess of the reimbursement received. Consequently, respondent determined petitioner had zero percent business use of the Toronado in 1982, 49 percent in 1983, and 5 percent in 1984, and accordingly allowed petitioners depreciation deductions based on these percentages. By considering all of petitioner's deductions together, it appears that respondent determined the deductibility of depreciation under section 168 on the same standards as the deductibility of incurred mileage under section 162. On brief, respondent maintains this position by contending that if petitioner cannot substantiate his unreimbursed mileage, including section 274(d) requirements for substantiation of away-from-home mileage, he cannot prove business usage. Section 162 is not involved in determining the allowance for a depreciation deduction. Hoye v. Commissioner, T.C. Memo 1990-57. We need not determine whether petitioner's records met the level of substantiation required by section *703 274(d) since that provision does not govern in the case of depreciation deductions. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973). When an automobile is used partly for business and partly for personal purposes, it is appropriate to make an allocation of the percentage of business use and to allow only that percentage of depreciation as a business deduction. Henry Schwartz Corp. v. Commissioner, supra.See also Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The proportion of the use which is personal use is a question of fact. International Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970). While petitioner testified credibly, we are troubled by the fact that petitioner claims to have used the Toronado exclusively for business. It is well established that expenses incurred in commuting between home and place of business are personal and nondeductible. Commissioner v. Flowers, 326 U.S. 465 (1946). Petitioner parked the Toronado at his home at night yet claims to have never *704 driven it directly to his office from his home or vice versa. Based on the facts and circumstances of this *1963 case, we find this assertion to be inherently incredible. Although we do not find that petitioner used the Toronado exclusively for business, we may approximate allowable deductions "bearing heavily [if we choose] on the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, supra at 544. At the risk of any error bearing against petitioner, we conclude that all of petitioner's mileage was for a business use except for 10 miles each day he drove the Toronado representing his round trip commuting distance. Our finding of commuting mileage applies only to the unreimbursed mileage claimed in the supplemental vouchers submitted in 1988 and does not imply that there was any commuting mileage in any of the original travel vouchers. In December 1982, petitioner's daily diary shows he drove the Toronado 6 days in which he did not claim reimbursement. He therefore had 60 miles that were personal. His percentage of business use of the Toronado for 1982 was therefore 280/340, or approximately 82 percent. In 1983, petitioner drove the Toronado *705 on 69 days which resulted in 690 miles that were incurred for personal use. We also find an additional 1,870 miles that were incurred for personal use because of petitioner's failure to prove when these miles were incurred. Petitioner therefore had a total of 2,560 miles that were personal, which resulted in a percentage of business use of the Toronado for 1983 of 11,578/14,130 or approximately 82 percent. Petitioner drove the Toronado on 110 days in 1984 for 1,100 miles incurred for personal use. He therefore had a percentage of business use of the Toronado for 1984 of 8,500/9,600 or approximately 89 percent. In making this determination, we reject respondent's claim that the availability of reimbursement for mileage renders the use not business related. On the contrary, without evidence that CID was somehow derelict in allowing mileage to be reimbursed, the availability of reimbursement supports the proposition that the mileage was business related. The only question that remains is whether the available amount of reimbursement would have fully compensated petitioner for the use of the Toronado. The reimbursement, which was on a mileage basis, did not cover items such as *706 depreciation. See Podems v. Commissioner, 24 T.C. 21, 23 (1955). We find that respondent erred in determining the percentage of business use of the Toronado for purposes of depreciation and that petitioner is eligible for an increased percentage consistent with our findings in this case. B. Section 179 Expense Deduction For taxable year 1982, section 179 allows a taxpayer to elect to expense the cost of certain property acquired for use in a trade or business, including automobiles, in an amount not to exceed $ 5,000 in the year the property was placed in service. Sec. 1.179-1(a) and (b), Income Tax Regs. If the property was not exclusively used for business purposes, the deduction is limited to the fraction of the property's cost determined by its business-use percentage up to the $ 5,000 limitation, provided that more than 50 percent of the property's use in the taxable years the property is placed in service is for trade or business purposes. Sec. 1.179-1(d), Income Tax Regs.
Our determination of business use for purposes of depreciation *707 is likewise applicable here. As stated above, we find that the Toronado had a business use percentage of approximately 82 percent in 1982. Because more than 50 percent of the Toronado's use was for business purposes, petitioner is able to take a section 179 deduction based upon the percentage of business use. C. Investment Tax Credit Sections 38, 46, and 48 provide a credit for investment in "section 38 property," which is generally defined as property "with respect to which depreciation * * * is allowable." Sec. 48(a)(1); Sec. 1.48-1(a) and (b), Income Tax Regs. If depreciation is reduced for the taxable year the property is placed in service because of personal use, the cost of the property subject to the credit must be proportionately reduced. Sec. 1.48-1(b)(2), Income Tax Regs. In addition, no investment credit is allowed with respect to any amount for which a deduction is allowed under section 179. Sec. 179(d)(9). The business use of the Toronado for purposes of depreciation discussed above is also applicable here. Petitioner is therefore eligible *708 for an appropriate investment tax credit after the section 179 deduction is taken into account. 3. Capitalization of Interest and Other Amounts The next issue for consideration is whether petitioner properly elected to capitalize taxes and other carrying charges by including such amounts in the cost of the Toronado when filing his 1982 return. On his 1982 return, petitioner listed the cost of the Toronado as $ 23,287.52. Petitioner then used this figure as his adjusted basis for purposes of depreciation. See secs. 1011, 1012, and 1016. Respondent determined that petitioner's basis was actually $ 17,860 (purchase price) because a proper election had not been made to capitalize the taxes and carrying charges. We agree with respondent. Section 266 provides: No deduction shall be allowed for amounts paid or accrued for such taxes and carrying *1964 charges as, under regulations prescribed by the Secretary, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.
*709 If a taxpayer elects to capitalize an item or items under section 266, such election shall be exercised by filing with the original return for which the election is made a statement indicating the item or items which the taxpayer elects to treat as chargeable to the capital account. Sec. 1.266-1(c)(3), Income Tax Regs.
The mere failure to take a deduction for expenses in the year they were incurred does not constitute a valid election to charge them to a capital account. Parkland Place Company v. Commissioner, 354 F.2d 916 (5th Cir. 1966). Petitioner argues, however, that including these items in the cost of the Toronado does satisfy the election requirements. In support, petitioner relies primarily on two cases. Petitioner relies first on Kentucky Utilities Company v. Glenn, 394 F.2d 631 (6th Cir. 1968), overruled on other grounds in Miller v. Commissioner, 733 F.2d 399 (6th Cir. 1984). In that case, the Court held that Kentucky Utilities elected to capitalize social security taxes for tax years 1947 *710 through 1953 even though it did not file a formal statement of election with its returns in those years. However, that case is distinguishable from the present matter because Kentucky Utilities made specific reference to the predecessor of section 266 in electing to deduct ad valorem taxes in its "original" return. It also attached schedules to its "original" return indicating that it was capitalizing social security taxes which "shows how much of each kind of tax [was] treated as a capital expenditure and how much [was not] so treated." Kentucky Utilities Company v. Glenn, supra at 635. The Court held that it was clear how the taxpayer was treating those expenses so as to preclude a subsequent election to deduct such taxes in amended returns. In contrast, petitioner in the instant case has not clearly shown how he intended to treat these items. Merely increasing the figure representing the cost of the Toronado, with no explanation of why the cost figure was being increased, cannot be said to be "a statement indicating the item or items * * * which the taxpayer elects to treat as chargeable to capital account." See sec. 1.266-1(c)(3), Income Tax Regs.
*711 Petitioner's reliance on Parkland Place Company v. United States, 248 F. Supp. 974 (N.D. Tex. 1964), affd. 354 F.2d 916 (5th Cir. 1966), is also misplaced. In Parkland Place, the Court held that a taxpayer was not entitled to deduct interest incurred by it on a note when the Court found it had elected to capitalize that interest on its income tax returns. However, the case does not state what information the income tax returns contained that made the Court reach this decision. Because petitioner has failed to prove he elected to capitalize taxes and carrying charges, he has failed to prove respondent erred in determining his basis in the Toronado. 4. Additions to Tax The final issue for our determination is whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for all three years. In the years applicable, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) *712 imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is the failure to use due care or to do what a reasonable and ordinary prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct and the taxpayer has the burden of proving otherwise. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). We find imposition of the addition to tax for negligence upon petitioners to be inappropriate. Petitioners were unable to prove the amount of unreimbursed mileage they claimed as a deduction was actually not reimbursable. Petitioners were also unable to prove 100 percent business use of the Toronado because of what we believe to be inherent commuting expenses. However, the fact that petitioners' proof was inadequate does not require us to find that claiming *713 the deduction for unreimbursed mileage and claiming 100 percent business use of the Toronado was due to negligence. Cf. Van Scoyoc v. Commissioner, 898 F.2d 149 (4th Cir. 1990), affg. a Memorandum Opinion of this Court. The legal issues involved were complex and the facts applicable to those issues were close. Additionally, the negligence addition is not proper if the taxpayer commits an error due to an honest misunderstanding of the facts or the law of which an average reasonable man might be capable. Standish v. Commissioner, 154 F.2d 1022 (9th Cir. 1946), affg. 4 T.C. 995 (1945). Despite working for the Internal Revenue Service, petitioner was not a technical tax expert. Petitioner kept records and the issue of deductibility of the unreimbursed mileage, as well as the election to capitalize taxes and carrying charges, was fairly debatable. Petitioners also claimed several deductions and a credit which they conceded before trial were improper. They also conceded *1965 the GMAC protection plan was not properly capitalized. However, *714 in each instance petitioners misunderstanding of the facts or the law was reasonable. Based upon the circumstances present in this case, we find the imposition of additions to tax to be improper. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The numbers for December 1982 and the entire year 1984 do not actually appear on the daily pages of the diary. Rather, the December 1982 numbers are all on one page of the 1982 diary and have a date that corresponds with each number. Two copies of a 1984 yearly calendar appear in the 1984 diary. Numbers appear next to various dates for the first five months of 1984 on one copy of the yearly calendar, and appear next to various dates for the last seven months of 1984 on the other copy of the yearly calendar.↩
3. Revenue agents generally have a wider range of technical expertise in tax cases.↩
4. Prior to trial, petitioner made a recapitulation schedule of his mileage for all three years. This schedule allegedly shows when most of these miles were incurred. However, there are inconsistencies between the daily diaries and the recapitulation schedule that cannot be reconciled. Because the daily diaries were prepared contemporaneously, we rely on them and give little weight to the recapitulation schedule.↩
5. During audit, petitioners conceded that the $ 550 paid for the G.M.A.C. Continuous Protection Plan was not properly included in the car's basis because the car was being depreciated under section 168. The plan was a five-year service contract that petitioner purchased and which General Motors Acceptance Corporation financed. Since the plan was an intangible asset, it could not be depreciated under section 168. Sec. 168(c)(1)↩.